Joel Ban, Esq.
*Local Counsel for Plaintiffs*
Ban Law Office P.C.
50 West Broadway #305
Salt Lake City, UT 84101
Phone (801) 532-2447
joel@banlawoffice.com

Paul A. Rossi. Esq.
*National Counsel for Plaintiffs*
*Pro Hac Vice* Admission Pending
IMPG Advocates
316 Hill Street, Suite 1020
Mountville, PA  17554
(717) 961-8978
Paul-Rossi@comcast.net

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## SOUTHERN REGION OF THE CENTRAL DIVISION

| | | |
|---|---|---|
| **STEVE MAXFIELD; ROBERT F. KENNEDY JR.; LIBERTY INITIATIVE FUND; TRENTON DONN POOL; and, ACCELEVATE 2020, LLC,** | : : : : : | |
| | : | **Civil Action # 4:23-cv-00112-RJS** |
| **Plaintiffs,** | : : | |
| **vs.** | : : | **COMPLAINT** |
| **DIEDRE HENDERSON, in her official capacity as the Lieutenant Governor of the State of Utah; and, RYAN COWLEY, in his official capacity as the Director of Elections of the State of Utah,** | : : : : : : | |
| **Defendants.** | : | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.      Plaintiff ROBERT F. KENNEDY JR. is an announced independent candidate for the Office of President of the United States for the 2024 general election (hereinafter, "Plaintiff RFK").  Plaintiff RFK, by and through his undersigned legal counsel, file this civil action under 42 U.S.C. §§ 1983 and 1988, for prospective declaratory and injunctive relief against Defendants DIEDRE HENDERSON, in her official capacity as the Lieutenant Governor of the State of Utah (hereinafter, "Defendant Henderson") and RYAN COWLEY, in his official capacity as the Director of Elections of the State of Utah (hereinafter, "Defendant Cowley") (collectively, hereinafter "Defendants") requesting expedited temporary preliminary injunctive relief and permanent declaratory and injunctive relief preventing Defendants from enforcing against Plaintiff RFK the unconstitutional early deadline imposed only on unaffiliated independent candidates for the Office of President of the United States whereby independent/unaffiliated candidates for the Office of President of the United States must collect and verify 1,000 petition signatures before they may file their "2024 Certificate of Nomination for Unaffiliated Candidate" (hereinafter the "Certificate of Nomination") (attached hereto as "Exhibit A"), which must be filed between the dates of January 2, 2024 and January 8, 2024.  *See* U.C.A. §§ 20A-9-201.5(2)(a) & (b), 20A-9-503(4)(b) (hereinafter, collectively, the "Challenged Early Deadline").  Accordingly, Plaintiff

RFK's campaign must collect and file 1,000 valid petition signatures (a validation process which can take up to three weeks).  Next, the petitions must be validated with county election clerks, collected and prepared for filing all petitions with Defendants before January 8, 2024, then filed with Defendants, along with the required Certificate of Nomination no later than the close of business on January 8, 2024.

No state in the history of the United States has sought to impose such an early date to collect, validate and file ballot access petitions to secure ballot access for the general election to be held on the far-off date of November 5, 2024.  The challenged early deadline imposed on Plaintiff RFK and his campaign to secure ballot access for the 2024 Utah general election is, on its face, a severe violation of rights guaranteed under the First and Fourteenth Amendments to the United States Constitution for which the State of Utah has no compelling nor legitimate interest to enforce and for which Plaintiff RFK is entitled to the requested immediate emergency temporary restraining order and preliminary and permanent equitable relief.

2.      Plaintiff STEVE MAXFIELD, (hereinafter "Plaintiff Maxfield"), LIBERTY INITIATIVE FUND (hereinafter, "Plaintiff LIF"), TRENTON DONN POOL (hereinafter, "Plaintiff Pool"), and ACCELEVATE 2020, LLC., (hereinafter "Plaintiff Accelevate") intend to circulate a statewide initiative petition to impose

term limits on members of the Utah state legislature in 2025 for the 2026 general election ballot.  Plaintiffs Maxfield, LIF, Pool and Accelevate, by and through their undersigned legal counsel, file this civil action under 42 U.S.C. §§ 1983 and 1988, for prospective declaratory and injunctive relief against Defendants to enjoin them from enforcing: (1) Utah's requirement that only residents of Utah may circulate initiative and referendum petitions in Utah pursuant to U.C.A. §§ 20A-7-105 (4)(a), 20A-2-105 (1)(b), 20A-2-105(4)(a); (2) the ban, imposed under U.C.A. §§ 20A-7-104 (1), (2) & (3), on compensating initiative and petition circulators based on the number of valid signatures collected and requiring any compensation to be paid based on the number of hours worked, thereby imposing the requirement on sponsors of initiative and referendum petition to compensate circulators for the time spent on producing forged signatures; and, (3) the forced-speech requirement imposed, only on paid initiative and referendum circulators to wear a badge, identifying and announcing their status as paid petition circulators under U.C.A. § 20A-7-104(4), (hereinafter, collectively, the "Challenged Circulator Provisions") all in violation of rights guaranteed to plaintiffs under the First and Fourteenth Amendments to the United States Constitution.

## JURISDICTION

3.     Jurisdiction lies in this Court under 28 U.S.C. §1331, providing that district courts shall have original jurisdiction over all civil actions arising under the

Constitution of the United States.  Moreover, jurisdiction lies under 42 U.S.C. §1983 and 28 U.S.C. §1343(a), the jurisdictional counterpart of 42 U.S.C. §1983, as Plaintiffs allege violation of rights guaranteed to them under the First and Fourteenth Amendments to the United States Constitution.

## **VENUE**

4.     Venue is proper in the United States District Court for the District of Utah under 28 U.S.C. §1391 as Defendants exercise their authority exclusively within this district and maintain their offices within this district and all of the operative acts and/or omissions have or will occur within this district.

5.     Furthermore, local venue is proper in the Southern Region of the Central District of this Court has the Plaintiff Steve Maxfield, the only Utah resident, is a resident of the Southern Region of the Central District of this Court and all of the acts and or omissions causing him constitutional harm will occur in this district.

## **PARTIES**

6.     Plaintiff RFK announced he is an independent candidate for the Office of President of the United States on Monday, October 9, 2024.  He intends to compete for the electoral votes in all fifty states and the District of Columbia.  As such, Plaintiff RFK intends to exercise his right to secure access to Utah's 2024 general election ballot on terms consistent with rights guaranteed to him under the

First and Fourteenth Amendments to the United States Constitution. The Certificate of Nomination in tandem with the challenged early deadline imposed by Utah and enforced by Defendants requires that an independent/unaffiliated candidate for the Office of President of the United States must: (1) collect at least 1,000 valid signatures from qualified voters of the State of Utah on a petition promulgated by Defendants; (2) file the petition signatures and wait for the signatures to be verified as valid; (3) and then collect the petitions and file them with Defendants, along with the Certificate of Nomination all on or before January 8, 2024. The combined effect of the challenged early deadline and the Certificate of Nomination impose the earliest deadline on independent presidential candidates in the history of the United States and is clearly unconstitutional. Plaintiff RFK maintains residences in the states of California and New York.

7. Plaintiff Maxfield is a resident of Kanosh, Utah and longtime supporter of various statewide and local initiatives and intends to support the planned initiative campaign, sponsored by Plaintiff LIF, to impose strict term limits on members of the Utah state legislature, as well as other initiatives as they become available to support and circulate. Plaintiff Maxfield supported and circulated the anti-bribery initiative in 2010, the E-signature initiatives in 2010 through 2012, the 2020 Millard County initiative to ban new industrial hog farms across the county and require any effort to site one within Millard County to go on

the ballot for a vote.  Plaintiff Maxfield has direct experience that the challenged

plaintiff Maxfield is a resident of Kamosh, Utah in Millard County, Utah.

8.     Plaintiff LIF is a nonprofit 501(c)(4) organization actively engaged in

planning to launch an initiative campaign to impose strict term limits on members

of the Utah state legislature.  Plaintiff LIF's mission is to promote and support the

empowerment of citizens through the use of the initiative and referendum process

and intends to remain active in Utah indefinitely.  Plaintiff LIF is currently

engaged with local supporters and planning for the fundraising necessary to launch

a successful drive to secure the signatures required to secure access to Utah's 2026

general election ballot.  Plaintiff LIF has determined that the only way to raise the

funds necessary to launch a petition drive, and then secure the necessary

signatures, to secure ballot access is the elimination of both the residency

requirement and ban on compensation based on the number of valid signatures

collected by professional petition circulators.  Plaintiff LIF has determined there

are not enough professional petition circulators who reside in the State of Utah

sufficient for it collect petition signatures using more reliable professional petition

circulators.  In addition, Plaintiff LIF's experience has demonstrated that

compensating petition circulators based on the number of hours worked is much

less efficient and severely restrictive on the ability to raise funds and quickly

collect signatures than compensation based on the number of valid signatures

collected. In addition, the challenged badge requirement imposes unconstitutional forced speech on petition circulators, all without advancing any legitimate state interest. Plaintiff LIF is one of the original national proponents of the effort to limit the number of consecutive terms politicians may serve in an effort to a return to the citizen-politician model that served this country well from its inception. in order to remedy the recent parade of infirmed lawmakers unwilling to retire from public office before their mental faculties degrade their ability to exercise the responsibility of holding high public office. Plaintiff LIF is headquartered at 4491 Cheshire Station Plaza, Suite 176, Woodbridge, Virginia, 22192.

9. Plaintiff Pool is an experienced professional petition circulator who is a resident of Texas. Plaintiff Pool would like to help circulate the term limit petition intended to be sponsored by Plaintiff LIF but is prohibited from freely doing so as a direct result of the challenged provisions. Plaintiff Pool is willing, as a condition precedent to being able to freely circulate Plaintiff LIF's term limit initiative petitions in Utah, to submit to the jurisdiction of Utah with respect to any investigation, service of process and/or prosecution of any issue related to petitions circulated by him in Utah. Plaintiff Pool has successfully circulated ballot access petitions in Pennsylvania, New Jersey, Texas, Indiana, Ohio, Illinois, California, Florida, Maine, Washington, Oregon, New York, Michigan, Arkansas, Arizona, Montana, Alaska and Alabama without any allegation of fraud. Plaintiff Pool,

through his petition circulation firms, has proven the ability to collect large numbers of valid signatures in short periods of time for his clients.  For instance, Plaintiff Pool, through his petition circulation firm, collected over 13,000 valid signatures for an initiative petition to amend the Pittsburgh Home Rule Charter in Pennsylvania in 2016 in less than 3 weeks after Judge Hornak of the United States District Court for the Western District of Pennsylvania preliminarily enjoined Pennsylvania's residency requirement for petition circulators for home rule charter petitions.  Further, Plaintiff Pool has never been accused of petition fraud by any private petition challenger or by any governmental entity.  Plaintiff Pool resides at 3800 Creek Road, Dripping Springs, Texas.

10.    Plaintiff Accelevate is a professional petition circulating firm formed under the laws of Texas that contracts with professional petition circulators to bid on contracts to collect signatures on ballot access petitions in order to secure ballot access for candidates, initiatives and referendums in jurisdictions across the United States.  Plaintiff Pool is the sole member and president of Plaintiff Accelevate. Plaintiff Accelevate has been asked by Plaintiff LIF to submit a bid within the next three months to circulate initiative petitions sponsored by Plaintiff LIF but can only do so if the residency requirement and compensation ban are either repealed or enjoined.  Plaintiff Accelevate's address is 3800 Creek Road, Dripping Springs, Texas.

11.     Defendant Henderson is the Lt. Governor of the State of Utah and is the chief official in charge of Utah's election machinery and charged with enforcing the challenged early deadline and challenged circulator provisions. Defendant Henderson promulgated the Certificate of Nomination which requires Plaintiff RFK to file no less than 1,000 validated petition signatures on or before January 8, 2024 along with the filing of the Certificate of Nomination.  Defendant Henderson's office is located at 350 North State Street, Suite 220, Salt Lake City, Utah.

12.     Defendant Cowley is the Director of Elector for the State of Utah and serves as the chief election clerk for the State of Utah charged with enforcing the Challenged Early Deadline and Challenged Circulator Provisions. Defendant Cowley's office is located at 350 North State Street, Suite 220, Salt Lake City, Uta

### RELEVANT FACTS

13.     Plaintiff RFK announced he was an independent candidate for the Office of President of the United States on October 9, 2023.

14.     In order to win the presidency, Plaintiff RFK must win 270 or more electoral college votes in the 2024 general election.

15.     As this Court is well aware, each state is allocated electoral college votes based on the total number of seats allocated to a state in the United States House of Representative and the United States Senate.

16.    In order to win Utah's electoral college votes, Plaintiff RFK must win more votes cast for the office of president than any other candidate on Utah's 2024 general election ballot.

17.    Accordingly, the first step to win Utah's electoral college votes is to secure access to Utah's 2024 general election ballot.

18.    In order to secure access to Utah's 2024 general election ballot, Plaintiff RFK must first collect 1,000 valid signatures, on forms promulgated by Defendants, from Utah's registered voters petitioning Defendants to place Plaintiff RFK's name on Utah's 2024 general election ballot and then file them with a Certificate of Nomination, also promulgated by Defendants, no later than January 8, 2024.

19.    U.C.A. §§ 20A-9-201.5(2)(a) & (b), 20A-9-503(4)(b) imposes the requirement that unaffiliated candidates for the Office of President and Vice-President of the United States must collect and validate with county election clerks no less than 1,000 valid signatures before they are filed with Defendants.

20.    The Certificate of Nomination, in turn, requires that it must be filed, along with 1,000 valid signatures already validated by county election clerks with the Certificate of Nomination which must be filed between January 2, 2024 and January 8, 2024.

21.    As a direct and proximate result of the of the Challenged Early

Deadline, unless expedited preliminary injunctive relief is secured on or before

December 7, 2023, Plaintiff RFK will be required to contract for out-of-state

professional petition circulators to travel to Utah to collect 1,500 to 1,600 raw

nomination petition signatures at a total cost of between $7 and $10 per signature.

22.    No federal court has ever upheld a deadline for independent

presidential candidates to file nomination petitions or certificates of nomination in

the month of January before the relevant general election.

23.    Furthermore, in *LaRouche v. Monson*, 599 F. Supp. 621 (D. Utah

1984), Utah represented to this Court that the then statutory deadline of April 15th

for independent presidential candidates to file their nomination petition and

declaration was unconstitutional.

24.    The challenged early deadline is the sole and proximate cause of

Plaintiff RFK's constitutional and threatened economic harm.

25.    Plaintiff RFK has no other adequate remedy at law.

26.    Plaintiffs Maxfield, LIF, Pool and Accelevate all challenged the ban,

imposed under U.C.A. §§20A-7-105(4)(a), 20A-2-105(1)(b) and 20A-2-105(4)(a)

on out-of-state petition circulators from circulating initiative and referendum

petition in Utah as a violation of clearly established rights under the First and

Fourteenth Amendments to the United States Constitution.

27.     Plaintiff LIF intends to recruit and assist a Utah resident to sponsor an initiative for the 2026 general election ballot to limit the number of terms a member of the Utah State legislature may serve.

28.     Plaintiffs LIF. Pool and Accelevate intend to contract with professional out-of-state petition circulators to assist with the initiative and referendum petitions that Plaintiff LIF plans to assist in sponsoring in Utah to limit the number of terms members of the Utah state legislature may serve.

29.     Plaintiff Pool is willing to submit to the jurisdiction of the State of Utah for the purpose of any post-filing investigation, service of process and/or prosecution of any initiative and/or referendum petition signatures filed by him in the State of Utah.

30.     Plaintiff Accelevate will only contract with out-of-state petition circulators who are willing to submit to the jurisdiction of the State of Utah for the purpose of any post-filing investigation, service of process and/or prosecution of any initiative and/or referendum petition signatures filed by them in the State of Utah.

31.     The challenged ban on out-of-state petition circulators is not imposed on out-of-state petition circulators for ballot access petitions circulated on behalf of presidential candidates seeking access to Utah's general election ballot.

32.     The ban on out-of-state petition circulators increases the costs of an initiative and/or referendum petition drive because it is more expensive and less efficient to recruit, train, supervise and deploy novice volunteers than to use trained professional petition circulators whose livelihood depends on efficient and accurate collection of petition signatures in as compressed time period as possible.

33.     There are not enough professional petition circulators who reside in the State of Utah to properly staff Plaintiff LIF's planned initiative to limit the terms of members of the Utah state legislature.

34.     The vast majority of professional petition circulators reside in states other than the State of Utah.

35.     The challenged ban on out-of-state petition circulators dramatically reduces the pool of petition circulators available to sponsors of initiative and/or referendum petitions and, therefore, reduces the total quantum of core political speech on issues of public concern which the United States Supreme Court has deemed worthy of the highest protections under the First and Fourteenth Amendments to the United States Constitution.

36.     Professional petition circulators are less likely to engage in petition fraud than volunteers because professional petition circulators rely on their good reputation to secure their next contract to circulate ballot access and initiative and referendum petition in Utah and other states.

37.     The challenged ban on out-of-state petition circulators for initiative and/or referendum petitions is not narrowly tailored to advance a compelling governmental interest where the state can more narrowly protect any asserted interest by merely requiring out-of-state petition circulators to submit to the jurisdiction of the State of Utah for any post-filing investigation, service of process and/or prosecution of any petition signatures filed by a petition circulator as a condition precedent to being able to lawfully circulate initiative and referendum petitions in Utah.

38.     Plaintiffs Maxfield, LIF, Pool and Accelevate also challenge the ban on compensating professional petition circulators based on the number of non-fraudulent petition signatures collected under U.C.A. §§ 20A-7-104 (1), (2) & (3).

39.     The challenged compensation ban limits the pool of available professional petition circulators available to Plaintiff LIF, Pool and Accelevate because the vast majority of the best professional petition circulators refuse to work on any petition drive where compensation is based on any factor other than the number of non-fraudulent signatures collected.

40.     As a result of the foregoing, the challenged compensation ban severely limits both the number of voices Plaintiff LIF, Pool and Accelevate can deploy to advance their message of political change protected and the total

quantum of core political speech under the First and Fourteenth Amendments to the United States Constitution.

41.     The State of Utah's only interest in the manner of compensation is premised solely on the State's interest in the prevention of petition fraud.

42.     Banning all per-signature compensation is, at best, overbroad because per-signature compensation based on the number of non-fraudulent signatures collected would fully protect Utah's alleged interest in preventing petition fraud.

43.     More troubling, the challenged compensation ban is the only compensation scheme which mandates Plaintiffs LIF, Pool and Accelevate to compensate petition circulators for the time they expend in engaging in actual fraud.

44.     Professional petition circulators will testify that they intentionally do not work as hard when their compensation is based on the number of hours worked than when their compensation is based on the number of non-fraudulent signatures collected.

45.     The challenged compensation ban which permits only compensation based on the number of hours worked provides (an intentional) motivation to drag out a petition drive by collecting as few signatures per hour because the longer the petition drive lasts the more money a petition circulator can earn while not working as hard on an hour-to-hour basis.

46.     The challenged compensation ban makes it impossible for Plaintiff LIF to construct a reliable budget as to how much a successful petition drive will cost in Utah, thereby making it harder to convince donors to contribute to a petition drive that Plaintiff LIF cannot guarantee will be successful based on a specific budgetary model.

47.     Donors to Plaintiff LIF will only donate to a proposed initiative and/or referendum petition drive if they are certain the drive will secure the number of required signatures sufficient to secure ballot access based on specific budgetary guidelines.  Donors do not want to donate to a petition drive which may or may not succeed for the amount of funds that can be reasonably raised for the putative initiative and/or referendum – otherwise their donation may just flow into a Utah rat-hole.

48.     The state legislature intentionally imposed the challenged compensation ban to make it more difficult for sponsors to secure ballot access because members of the state legislature do not want the citizens of Utah to usurp their own power over the political agenda in the State.

49.     Defendants and the State of Utah have no legitimate state interest in the manner of compensating professional petition circulators based on the number non-fraudulent signatures collected.

50.     Plaintiffs Maxfield, LIF, Pool and Accelevate also challenged the requirement, imposed only on paid initiative and referendum circulators, to wear a badge, identifying and announcing their status as paid petition circulators under U.C.A. § 20A-7-104(4) as a violation of clearly established rights under the First and Fourteenth Amendments to the United States Constitution.

51.     The challenged badge requirement imposes forced speech on paid petition circulators in violation in violation of First Amendment rights.

52.     The challenged badge requirement exposes paid circulators to an elevated threat that their identity will be discovered during the circulation of initiative and/or referendum petitions subjecting them to negative action by opponents of their proposed initiative and/or referendum in Utah in violation of United States Supreme Court precedent.  Don't think it requires a name just that they are a "paid signature gatherer".

53.     Defendants have no legitimate interest in the compelled speech imposed by the challenged badge requirement.

54.     Plaintiffs Maxfield, LIF, Pool and Accelevate have no adequate remedy at law for the challenged ban on out-of-state petition circulators.

55.     Plaintiffs Maxfield, LIF, Pool and Accelevate have no adequate remedy at law for the challenged compensation ban.

56.     Plaintiffs Maxfield, LIF, Pool and Accelevate have no adequate remedy at law for the challenged badge requirement for paid initiative and/or referendum petition circulators.

## CAUSES OF ACTION

## COUNT I

57.     Plaintiff RFK realleges and assert all foregoing paragraphs as if fully set forth herein.

59.     The Challenged Early Deadline, working in tandem with the terms of the Certificate of Nomination impose an unconstitutionally early deadline for independent presidential candidate to secure ballot access in Utah's general election in violation of rights guaranteed to Plaintiff RFK under the First and Fourteenth Amendments for which Plaintiff RFK demands the requested relief.

## COUNT II

60.     Plaintiffs Maxfield, LIF, Pool and Accelevate realleges and assert all of the foregoing paragraphs as if fully set forth herein.

61.     The ban on out-of-state petition circulators imposed under U.C.A. §§ 20A-7-105(4)(a), 20A-2-105(1)(b), and 20A-2-105(4)(a) severely impairs clearly established rights under the First and Fourteenth Amendments to the United States Constitution which are not narrowly tailored to advance a compelling

governmental interest and is therefore unconstitutional for which Plaintiffs

Maxfield, LIF, Pool and Accelevate demand their requested relief.

## COUNT III

62.     Plaintiffs Maxfield, LIF, Pool and Accelevate reallege and assert all of

the foregoing paragraphs as if fully set forth herein.

63.     The ban on out-of-state petition circulators imposed under U.C.A. §§

20A-7-105(4)(a), 20A-2-105(1)(b), and 20A-2-105(4)(a), as applied to

professional petition circulators willing to submit to the jurisdiction of the State of

Utah for any post-filing investigation, service of process and/or prosecution as a

condition precedent to being able to lawfully circulate initiative and/or referendum

petitions in Utah severely impairs clearly established rights under the First and

Fourteenth Amendments to the United States Constitution which are not narrowly

tailored to advance a compelling governmental interest and is therefore

unconstitutional for which Plaintiffs Maxfield, LIF, Pool and Accelevate demand

their requested relief.

## COUNT IV

64.     Plaintiffs Maxfield, LIF, Pool and Accelevate reallege and assert all of

the foregoing paragraphs as if fully set forth herein.

65.     The compensation ban imposed under U.C.A. §§ 20A-7-104(1), (2) &

(3) severely impairs clearly established rights under the First and Fourteenth

Amendments to the United States Constitution which are not narrowly tailored to advance a compelling governmental interest and is therefore unconstitutional for which Plaintiffs Maxfield, LIF, Pool and Accelevate demand their requested relief.

## COUNT V

66.     Plaintiffs Maxfield, LIF, Pool and Accelevate reallege and assert all of the foregoing paragraphs as if fully set forth herein.

67.     The requirement imposed under U.C.A. § 20A-7-104(4) that paid initiative and/or referendum petition circulators wear a badge identifying and announcing their status as paid petition circulators severely impairs clearly established rights under the First and Fourteenth Amendments to the United States Constitution against forced or compelled speech which are not narrowly tailored to advance a compelling governmental interest and is therefore unconstitutional for which Plaintiffs Maxfield, LIF, Pool and Accelevate demand their requested relief.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a.      Enter an ORDER preliminarily enjoining Defendants' enforcement of the Challenged Early Deadline imposed under U.C.A. §§ 20A-9-201.5(2)(a) & (b), 20A-9-503(4)(b) working in concert with the terms of the Certificate of Nomination;

b.      Enter an ORDER preliminarily setting the deadline for independent

presidential candidates to validate and file their nomination petitions

and Certificate of Nomination for no later than 5:00 p.m. on August 1,

2024;

c.      Enter an ORDER declaring the Challenged Early Deadline imposed

under U.C.A. §§ 20A-9-201.5(2)(a) & (b), 20A-9-503(4)(b) working

in concert with the terms of the Certificate of Nomination as

unconstitutional;

d.      Enter an ORDER permanently enjoining Defendants from enforcing

the Challenged Early Deadline imposed under U.C.A. §§ 20A-9-

201.5(2)(a) & (b), 20A-9-503(4)(b) working in concert with the terms

of the Certificate of Nomination as unconstitutional;

e.      Enter an ORDER permanently setting the deadline for independent

presidential candidates to file any documents necessary to secure

ballot access for Utah's general election to August 1, 2024;

f.      Enter an ORDER declaring the ban on out-of-state petition circulators

imposed under U.C.A. §§ 20A-7-105(4)(a), 20A-2-105(1)(b) & 20A-

2-105(4)(a) for initiative and/or referendum petitions as

unconstitutional under the First and Fourteenth Amendments to the

United States Constitution;

g.   Enter an ORDER permanently enjoining Defendants from enforcing the ban on out-of-state petition circulators imposed under U.C.A. §§ 20A-7-105(4)(a), 20A-2-105(1)(b) & 20A-2-105(4)(a) for initiative and/or referendum petitions as unconstitutional under the First and Fourteenth Amendments to the United States Constitution;

h.   Enter an ORDER declaring the ban on out-of-state petition circulators imposed under U.C.A. §§ 20A-7-105(4)(a), 20A-2-105(1)(b) & 20A-2-105(4)(a) for initiative and/or referendum petitions as unconstitutional, as applied to any out-of-state petition circulator willing to submit to the jurisdiction of the State of Utah for the purpose of any post-filing investigation, service of process and/or prosecution of any petitions filed by them under the First and Fourteenth Amendments to the United States Constitution;

i.   Enter an ORDER permanently enjoining Defendants from enforcing the ban on out-of-state petition circulators imposed under U.C.A. §§ 20A-7-105(4)(a), 20A-2-105(1)(b) & 20A-2-105(4)(a) for initiative and/or referendum petitions as unconstitutional, as applied to any out-of-state petition circulator willing to submit to the jurisdiction of the State of Utah for the purpose of any post-filing investigation, service

of process and/or prosecution of any petitions filed by them under the First and Fourteenth Amendments to the United States Constitution;

j.  Enter an ORDER declaring the compensation ban on per-signature compensation for initiative and/or referendum petition circulators imposed under U.C.A. §§ 20A-7-104(1), (2) & (3) as unconstitutional under the First and Fourteenth Amendments to the United States Constitution;

k.  Enter an ORDER permanently enjoining Defendants from enforcing the compensation ban on per-signature compensation for initiative and/or referendum petition circulators imposed under U.C.A. §§ 20A-7-104(1), (2) & (3) as unconstitutional under the First and Fourteenth Amendments to the United States Constitution;

l.  Enter an ORDER declaring the badge requirement for initiative and/or referendum petition circulators imposed under U.C.A. § 20A-7-104(4) as unconstitutional forced and compelled speech under the First and Fourteenth Amendments to the United States Constitution;

m.  Enter an ORDER permanently enjoining Defendants from enforcing the badge requirement for initiative and/or referendum petition circulators imposed under U.C.A. § 20A-7-104(4) as unconstitutional

forced and compelled speech under the First and Fourteenth Amendments to the United States Constitution;

n.    Award Plaintiffs the costs of this action together with their reasonable attorneys' fees and expenses pursuant to 42 U.S.C. §1988;

o.    Award nominal monetary damages to all Plaintiffs; and,

p.    Retain jurisdiction over this action and grant Plaintiffs any such other relief which may, in the determination of this Honorable Court, be necessary and proper.

Respectfully submitted,

Dated: December 1, 2023         **/s/ Joel Ban**

Joel Ban, Esq.
*Local Counsel for Plaintiffs*
Ban Law Office P.C.
50 West Broadway
Salt Lake City, UT 84101
Phone (801) 532-2447
Fax (860) 770-6223
joel@banlawoffice.com


**/s/ Paul A. Rossi**

Paul A. Rossi. Esq.
*National Counsel for Plaintiffs*
*Pro Hac Vice* Admission Pending
IMPG Advocates
316 Hill Street
Suite 1020
Mountville, PA  17554
(717) 961-8978
Paul-Rossi@comcast.net