Joel Ban, Esq.
*Local Counsel for Plaintiffs*
Ban Law Office P.C.
50 West Broadway #305
Salt Lake City, UT 84101
Phone (801) 532-2447
joel@banlawoffice.com

Paul A. Rossi. Esq.
*National Counsel for Plaintiffs*
*Pro Hac Vice* Admission Pending
IMPG Advocates
316 Hill Street, Suite 1020
Mountville, PA  17554
(717) 961-8978
Paul-Rossi@comcast.net

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## SOUTHERN REGION OF THE CENTRAL DIVISION

| | | |
|---|---|---|
| **STEVE MAXFIELD; ROBERT F. KENNEDY JR.; LIBERTY INITIATIVE FUND; TRENTON DONN POOL; and, ACCELEVATE 2020, LLC,** | : | |
| | : | **Civil Action # 4:23-cv-00112-RJS** |
| **Plaintiffs,** | : | |
| | : | |
| **vs.** | : | **Motion for** |
| | : | **Expedited Preliminary Injunction** |
| **DIEDRE HENDERSON, in her official** | : | **And Briefing Schedule** |
| **capacity as the Lieutenant Governor of** | : | |
| **the State of Utah; and, RYAN COWLEY,** | : | |
| **in his official capacity as the Director of** | : | |
| **Elections of the State of Utah,** | : | |
| | : | |
| **Defendants.** | : | |

## MOTION FOR EXPEDITED PRELIMINARY INJUNCTION & BRIEFING SCHEDULE

Plaintiffs, by and through their undersigned legal counsel, respectfully request this Court order expedited briefing and hearing on Plaintiff RFK's pending motion to enjoin the unconstitutional early filing deadline imposed by Defendants on independent candidates for the Office of President of the United States.  As more fully set forth in Plaintiff RFK's Motion and supporting Memorandum of Law, Plaintiff RFK seeks a preliminary injunction ordering Defendants to not enforce the January 8, 2024, deadline to file validated nomination petitions and Certificate of Nomination required for Plaintiff RFK to secure access to the 2024 general election ballot.  As detailed in Plaintiff RFK's Memorandum of Law, the current deadline is the earliest deadline ever sought to be imposed on independent presidential candidates in the modern (post-*Anderson v. Celebrezze*) era.  No federal court has ever upheld a January deadline to require independent presidential candidates to file all of their required ballot access documents.  In fact, in *LaRouche v. Monson*, 599 F.Supp. 621 (D. Utah 1984), the then defendant Lt. Governor of the State of Utah, admitted and represented to this Court that the then imposed April 15th deadline for independent presidential candidates to file their ballot access documents was freely acknowledged to be so defective that the Lt. Governor advised independent candidates to ignore the statutory deadline and file their documents as late as mid-September.  *Monson*, 599 F.Supp at 627-28.

Unfortunately, Defendants seek to enforce the new January 8, 2024 deadline such that immediate relief is necessary in order to prevent severe economic harm to Plaintiff RFK. As bad as the January 8, 2024 deadline is, what is even worse is that Plaintiff RFK must complete and stop signature collection in mid-December, of 2023, at the latest, in order to file Plaintiff RFK's nomination petitions with the county clerks to have the petition signatures validated – a process that can take up to 3-weeks. The county clerk for Salt Lake County has advised that she will need 2 weeks to validate all signatures, such that petitioning must stop no later than December 14th. Accordingly, in order to collect the 1,500 to 1,600 raw signatures – in the middle of December's cold weather, sufficient to guarantee that at least 1,000 of the signatures will be validated in time to meet the January 8, 2023 deadline, Plaintiff RFK will be forced at the end of next week, at the latest, to make the decision to hire professional petition circulators at a cost of between $7 and $10 per valid signature by late next week.

This is not a difficult case. In fact, Plaintiff RFK contends that the overwhelming binding precedent at force in this case militate in favor of Plaintiff's requested injunctive relief. This case is so clear, that Defendants ought to immediately concede the issue as they did in 1984 facing an April 15th deadline.

Expedited briefing and hearing is necessary to avoid the economic damage, which is not recoverable against Defendants in this (or any other) action, which

will result from the need to hire professional petition circulators to remedy the lack of volunteers willing, or able, to collect signatures in mid-December when the weather makes in very difficult to engage qualified voters who are, largely, hunkered down inside and not available for outside petition engagement as they are during the spring and summer months.  Only professional petition circulators have the skill set and tenacity to brave December in Utah to secure the required number of raw signatures to secure ballot access for Plaintiff RFK.

Defendants will be served the same day this Court issues the Summons in this action, hopefully no later than the morning of Monday, December 4, 2024.  As soon as service is perfected, a Certificate of Service will be posted on the docket. Plaintiffs propose the following schedule:

(1) Defendants file their brief no later than 5:00 p.m. on Wednesday, December 6, 2024;

(2) No Reply Brief for Plaintiffs;

(3) Hearing, limited to legal argument, 15 to 20 minutes per side on Friday, December 8, 2024.  Plaintiffs are amenable to a telephonic hearing at the convenience of the Court and opposing counsel.

Plaintiffs believe the foregoing schedule will enable the Court to consider and decide Plaintiff RFK's Motion for Expedited Preliminary Injunction in a sufficient amount of time for Plaintiffs to forego taking action to hire

professional petition circulators in order to meet the clearly unconstitutional early filing deadline of January 8, 2024.  Plaintiffs take this position only because of the weight of uncontroverted authority in support of Plaintiff RFK's claim that the January 8, 2024 deadline is unconstitutional in clear violation of rights guaranteed to Plaintiff under the First and Fourteenth Amendments to the United States Constitution.

Respectfully submitted,

Dated: December 1, 2023

   **/s/ Joel Ban**       
Joel Ban, Esq.
*Local Counsel for Plaintiffs*
Ban Law Office P.C.
50 West Broadway #305
Salt Lake City, UT 84101
Phone (801) 532-2447
Fax (860) 770-6223
joel@banlawoffice.com

    **/s/ Paul A. Rossi**     
Paul A. Rossi. Esq.
*National Counsel for Plaintiffs*
*Pro Hac Vice* Admission Pending
IMPG Advocates
316 Hill Street
Suite 1020
Mountville, PA  17554
(717) 961-8978
Paul-Rossi@comcast.net

Joel Ban, Esq.
*Local Counsel for Plaintiffs*
Ban Law Office P.C.
50 West Broadway #305
Salt Lake City, UT 84101
Phone (801) 532-2447
joel@banlawoffice.com

Paul A. Rossi. Esq.
*National Counsel for Plaintiffs*
*Pro Hac Vice* Admission Pending
IMPG Advocates
316 Hill Street, Suite 1020
Mountville, PA  17554
(717) 961-8978
Paul-Rossi@comcast.net

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## SOUTHERN REGION OF THE CENTRAL DIVISION

| | | |
|---|---|---|
| **STEVE MAXFIELD; ROBERT F. KENNEDY JR.; LIBERTY INITIATIVE FUND; TRENTON DONN POOL; and, ACCELEVATE 2020, LLC,** | : | |
| | : | **Civil Action # 4:23-cv-00112-RJS** |
| **Plaintiffs,** | : | |
| | : | |
| **vs.** | : | **Memorandum of Law in Support** |
| | : | **Plaintiff RFK's Motion for an** |
| **DIEDRE HENDERSON, in her official** | : | **Expedited Preliminary Injunction** |
| **capacity as the Lieutenant Governor of** | : | |
| **the State of Utah; and, RYAN COWLEY,** | : | |
| **in his official capacity as the Director of** | : | |
| **Elections of the State of Utah,** | : | |
| | : | |
| **Defendants.** | : | |

1

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF RFK'S
## MOTION FOR EXPEDITED PRELIMIUNARY INJUNCTION

### I.   Summary of the Argument

Plaintiff RFK brings this emergency ballot access action pursuant to 42 U.S.C. § 1983, challenging Utah U.C.A. §§ 20A-9-201.5(2)(a) & (b) and 20A-9-503(4)(b) in tandem and concert with the "2024 Certificate of Nomination for Unaffiliated Candidate" promulgated by Defendants (hereinafter the "Certificate of Nomination" and collectively the "Challenged Early Deadline") as an unconstitutional early deadline imposed on ballot access for independent candidates for the Office of President of the United States.  Plaintiff RFK is an announced independent candidate for the Office of President of the United States and is seeking access to Utah's 2024 general election ballot to win Utah's six electoral college votes in 2024. The Certificate of Nomination and the challenged early deadline, acting together and in concert, requires Plaintiff RFK to collect, verify and file nomination petitions containing no fewer than 1,000 valid signatures of qualified electors, with the Certificate of Nomination, no later than January 8, 2024 in order to secure access to Utah's 2024 general election ballot. This challenged early deadline constitutes a *per se* violation of established Supreme Court precedent along with representations made by Defendants' predecessors in office, to this Court, in prior litigation establishing that a much earlier deadline is unconstitutional.  For instance, and dispositive of Plaintiff

RFK's right to an expedited preliminary injunction, is the fact that Utah admitted to this court in *LaRouche v. Monson*, 599 F. Supp. 621, 628 (1984), that the then statutorily imposed deadline of April 15th for independent presidential candidates to file their nomination petitions was:

> "freely acknowledged by the state to be defective.  It is for that reason the statutory deadline is, in practice, simply ignored.  Plaintiffs knew that Utah officials had accepted one nomination petition and were amenable to accepting others from candidates if the petitions were complete, in proper form and tendered at a reasonable time prior to the general election."

*Id*.  Unlike the facts in *LaRouche v. Monson*, Defendants intend to enforce the January 8, 2024, deadline and have failed to disclaim enforcement of the unconstitutional challenged early deadline for independent presidential candidates. It is then both mystifying and indefensible, and frankly, insulting to this Court for representations made to this Court in prior litigation, as to why Utah now seeks to impose and enforce a January 8, 2024 deadline for Plaintiff RFK to file his nomination petitions, as an independent presidential candidate, containing a minimum of 1,000 pre-verified signatures (a 333% increase in the number of signatures required over the signature requirement imposed under the unconstitutional April 15th deadline litigated in *LaRouche v. Monson*) along with his Certificate of Nomination no later than January 8, 2024.  Accordingly, the requested expedited preliminary injunction Order should be granted to protect

Plaintiff RFK from needing to immediately hire expensive out-of-state professional petition circulators to descend into Utah to collect 1,500 to 1,600 signatures, in the middle of Utah's harsh winter weather, in time for Plaintiff RFK to submit his nomination petitions to county clerks, who have up to 3 weeks to validate the signatures, and then collect the validated nomination petitions and file them with his Certificate of Nomination with Defendants no later than January 8, 2024.

The Challenged Early Deadline imposes a significant burden on independent presidential candidates who do not participate in the primary election process. Candidates and voters (who must be convinced to sign Plaintiff RFK's nomination petitions) who are dissatisfied with the candidates offered by the major political parties after their nomination processes are barred from declaring their candidacies and appearing on the ballot for the November 2024 general election. The circulation of nomination petitions must be permitted during a time when the voters are aware of the major political party nominations so that they can opt to support alternative candidates for the general election ballot who share their political views. Requiring Plaintiff RFK to collect signatures so early, in the middle of Utah's harsh December weather (when voters are not easily accessible outside as they are during spring and summer weather) and when they are not sure as to who will be nominated by the major political parties imposes a major burden on Plaintiff RFK's effort to secure the required number of valid signatures. The

Challenged Early Deadline imposes the burden on Plaintiff RFK to circulate his nomination petitions at a time when voters are not yet focused on the 2024 general election or with knowledge as to who the major political parties have nominated so that they may opt for Plaintiff RFK's ballot access by signing his petition – all in violation of established Supreme Court precedent.

Further, the Challenged Early Deadline for independent presidential candidates in Utah cannot be justified by any compelling state interest as Defendants do not need to know who the candidates are for the 2024 general election so far in advance of the need to construct their general election ballot because none of the major political parties, who have mandatory automatic ballot access, are known.  There is simply no state interest served in forcing Plaintiff RFK to qualify for the 2024 general election ballot as early as January 8, 2024. Accordingly, the challenged early deadline is a *per se* violation of clearly established rights under the First and Fourteenth Amendments to the United States Constitution and Plaintiff RFK is entitled to an expedited preliminary injunction Order, barring Defendants from enforcing the challenged early deadline.

## II.    <u>**Statement of Facts**</u>

Plaintiff RFK announced he is an independent candidate for the Office of President of the United States on Monday, October 9, 2024.  Plaintiff RFK intends to compete for the electoral votes in all fifty states and the District of Columbia.

As such, Plaintiff RFK intends to exercise his right to secure access to Utah's 2024 general election ballot on terms consistent with rights guaranteed to him under the First and Fourteenth Amendments to the United States Constitution.

Utah U.C.A. §§ 20A-9-201.5(2)(a) & (b) and 20A-9-503(4)(b) in tandem and in concert with the Certificate of Nomination and the Challenged Early Deadline requires that an independent/unaffiliated candidate for the Office of President of the United States must: (1) collect at least 1,000 valid signatures from qualified voters of the State of Utah on a petition promulgated by Defendants; (2) file the petition signatures with county clerks and wait for the signatures to be verified as valid – a task county clerks are permitted to take up to 3 weeks to complete; (3) then collect the verified nomination petitions and file them with Defendants, along with the Certificate of Nomination all on or before January 8, 2024.  The combined effect of the challenged early deadline and the Certificate of Nomination impose the earliest deadline on independent presidential candidates in the history of the United States and is clearly unconstitutional.  No federal court has ever upheld a petition and filing deadline for independent presidential candidates as early as Utah's new January 8th deadline, which, in reality, requires Plaintiff RFK to complete his ballot access petition drive on or before December 10, 2023.

In fact, Plaintiff RFK has begun to collect signatures in Utah, but the identification of a sufficient number of volunteers willing to collect signatures

outside in December has been very difficult to accomplish.  The only way for

Plaintiff RFK to be able to hope to comply with the Challenged Early Deadline is

to hire professional petition circulators no later than December 7, 2024, most from

out-of-state, which will cost the campaign the need to transport these professional

petition circulators into Utah, with little notice, and then pay them based on the

number of valid signatures collected, at total rate of between $7 to $10 per valid

signatures.  Further, in order to guard against invalid signatures, in order to be sure

to collect 1,000 valid signatures as required for ballot access, Plaintiff RFK will

need to collect 1,500 to 1,600 raw signatures.

In *Monson*, Utah freely admitted that the then April 15th deadline for

independent presidential candidates to file their nomination petitions and other

forms on or before April 15th was unconstitutional, and on their own initiative,

ignored the statutory deadline and permitted independent presidential candidates to

file their forms until mid-September.  The only possible purpose for the current

deadline, which Defendants have refused to disclaim, is a naked and

constitutionally insulting intentional legislative effort to block independent

presidential candidates from the 2024 general election ballot in Utah.

### III.   **Argument**

#### A. **Standard of Review for Temporary Restraining Order and Preliminary Injunctive Relief**

Based upon the facts detailed above, Plaintiff RFK is clearly entitled to expedited preliminary injunctive relief.  To obtain a preliminary injunctive relief, a movant must show: (1) substantial likelihood of prevailing on the merits; (2) irreparable injury if the injunction is denied; (3) greater injury to the movant absent the injunction than that which the opposing party will suffer under the injunction; and, (4) lack of adverseness to the public interest.  *Utah Licensed Bev. Ass'n v. Leavitt*, 256 F.3d 1061, 1065-66 (10th Cir. 2001).  Defendants have the burden of justifying its regulation even on a motion to enjoin enforcement of an ordinance or statutory provision – a burden Defendants cannot sustain.  *Utah Licensed Bev.*, 256 F.3d at 1073.

**B. Plaintiff RFK Satisfies All the Requirements for the Issuance of an <u>Expedited Preliminary Injunction</u>.**

**1. Plaintiff RFK is More than Merely Likely to Prevail on the <u>Merits of the Case</u>.**

The Supreme Court has long recognized that state ballot access rules: "place burdens on two different, although overlapping, kinds of rights – the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively.  Both of these rights, of course, rank among our most precious freedoms."  *Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968).  The burden arises because "voters can assert their preferences only through candidates or parties or

both.  'It is to be expected that a voter hopes to find on the ballot a candidate who comes near to reflecting his policy preferences on contemporary issues'" *Anderson v. Celebrezze*, 460 U.S. 780 at 787 (1983) (quoting *Lubin v. Panish*, 415 U.S. 709, 716 (1974)).  When a state, by means of its ballot access requirements, restricts the field of candidates from which a voter may choose, there is "always…at least some theoretical, correlative effect on voters."  *Anderson*, 460 U.S. at 786 (quoting *Bullock v. Carter*, 405 U.S. 134, 143 (1972)).

Of course, some regulation of access to the general election ballot is necessary to ensure that elections will be "fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes."  *Storer v. Brown*, 415 U.S. 724, 730 (1974).  However, "even when pursuing a legitimate interest, a State may not choose means that unnecessarily restrict constitutionally protected liberty," and must "adopt the least drastic means to achieve [its] ends."  *Illinois Elections Board v. Socialist Workers Party*, 440 U.S. 173, 185 (1979) (citation and quotation omitted); *Anderson*, 460 U.S. at 806.

As the Supreme Court reaffirmed in *Burdick v. Takushi*, 504 U.S. 428 (1992), ballot-access laws in general, and petition deadline rules in particular, must be evaluated according to the standard first articulated in *Anderson v. Celebrezze*. The court must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to

vindicate" against "the precise interests put forward by the state as justifications for the burden imposed by its rules," taking into consideration "the extent to which those interests make it necessary to burden plaintiff's rights." *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789). The Court also noted that "because the interests of minor parties and independent candidates are not well represented in state legislatures, the risk that the First Amendment rights of those groups will be ignored in legislative decision making may warrant more careful judicial scrutiny." *Anderson*, 460 U.S. at 793 n. 16.

In *Anderson*, the Supreme Court invalidated an Ohio petition deadline which required candidates who were not seeking access to the ballot through the Democratic or Republican Party primaries to file nomination petitions for the November general election no later than March 20, 1980, 75 days prior to the primary election and 229 days before the general election. *Anderson*, 460 U.S. at 783 n. 1. The Court in *Anderson* identified two distinct harms imposed by the early petition deadline.

First, the *Anderson* Court recognized that the early deadline affected an identifiable segment of voters – those dissatisfied with the major party candidates.

> In election campaigns…the candidates and the issues simply do not remain static over time. Various candidates rise and fall in popularity; domestic and international developments bring new issues to center stage and may effect voters' assessments…Such developments will certainly affect the strategies of candidates who have already entered the race; they may also create opportunities for new

> candidates….Yet Ohio's filing deadline prevents persons who wish to be independent candidates from…creating new political coalitions of Ohio voters…at any time after mid-to-late March….If the State's filing deadline were later in the year, a newly-emergent independent candidate could serve as the focal point for a grouping of Ohio voters who decide, after mid-March, that they are dissatisfied with the choices within the two major parties.

*Id*. at 790-92.  Second, and most important in this case, the Court recognized that

an early petition deadline:

> Burdens the signature-gathering efforts of independents who decide to run in time to meet the deadline.  When the primary campaigns are far in the future and the election itself is even more remote, the obstacles facing an independent candidate's organizing efforts are compounded. Volunteers are more difficult to recruit and train, media publicity and campaign contributions are more difficult to secure, and voters are less interested in the campaign.

*Id*. at 792.

The Court then rejected the three rationales offered by the State in support of

the early mid-March deadline: voter education, equal treatment and political

stability.  Although the Court accepted voter education as a legitimate goal, it held

that modern communications and widespread literacy made it "unrealistic to suggest

that it takes more than seven months to inform the electorate about the qualifications

of a particular candidate simply because he lacks a partisan label."  *Id*. at 797.  The

mid-March deadline also failed to serve the State's goal of voter education because

the relevant decision-making does not occur in late March, but in November, and

because the electoral process contains its own cure for inadequate voter education –
failure at the polls.  *Id*. at 798 n. 25.

Without commenting on the legitimacy of equal treatment as a state interest,
the Court held that Ohio's early mid-March filing deadline bore no relation to the
asserted goal.  Assuming that independent and partisan candidates were, in fact,
treated alike, the Court analyzed the rational for doing so.  For candidates
participating in a primary election, the early deadline was simply justified by
administrative concerns.  But no comparable justification supported the same
deadline for a candidate who did not participate in a primary and whose petitions
would not be examined until months later.  *Id*. at 800.  Moreover, only a candidate
participating in a primary would receive the correlative benefit of "automatic support
of an experienced organization."  *Id*. "In short, 'equal treatment' of partisan and
independent candidates simply is not achieved by imposing the March deadline on
both.  As we have written, "[s]ometimes the grossest discrimination can lie in
treating things that are different as though they are exactly alike."  *Id*. at 801 (quoting
*Jenness v. Fortson*, 403 U.S. 431, 442 (1971)).

Finally, the Court rejected Ohio's assertion that the early mid-March
deadline served to protect the two major parties from intra-party feuding, reasoning
that *Williams v. Rhodes* had already foreclosed any attempt to protect the two
major parties, as opposed to a two-party system in general, particularly at the

expense of independent candidates. *Id*. at 802. Further, unlike the statute upheld in *Storer*, 415 U.S. 724, the Ohio statute could not be plausibly explained as a legitimate attempt to prevent intra-party feuding in general. It could not be justified as a "sore loser" statute, since it blocked access to the general election "75 days before the primary, at a time when, by definition, no candidate has yet lost a party primary." *Anderson*, 460 U.S. at 804 n. 31. More generally, the early deadline applied even to those candidates who had not participated, nor intended to participate, as Plaintiff RFK in this action. *Id*. at 805. Finally, the Court noted that early petition deadlines could serve to impair party harmony by forcing dissident groups to form independent or third-party candidacies without first attempting to influence the outcome of major party primaries, in order that the dissident group might have some chance to place a candidate on the ballot. *Id*.

*Anderson's* reasoning is equally applicable to the case at bar. Indeed, in the wake of *Anderson*, the lower federal courts have routinely struck unreasonably early petition deadline statutes, comparable to Ohio's, when applied to independent or alternative party candidates. *See, e.g., New Alliance Party of Alabama v. Hand*, 933 F.2d 1568 (11th Cir. 1991) (*per curiam*) (April 6th petition deadline – 60 days before primary – invalidated); *Cromer v. State of South Carolina*, 917 F.2d 819 (4th Cir. 1990) (March 1 notice of candidacy requirement – 70 days before primary – invalidated); *Libertarian Party of Kentucky v. Ehrler*, 776 F.Supp. 1200 (E.D. Ky.

1991) (January 29 petition deadline – 119 days before primary – invalidated);

*Libertarian Party of Nevada v. Swackhamer*, 638 F.Supp. 565 (D. Nev. 1986)

(April 15 petition deadline – 140 days before primary – invalidated); *Cripps v.*

*Seneca County Bd. of Elec.*, 629 F. Supp. 1335 (1985) (February 21 petition

deadline – 75 days before primary – invalidated); *Stoddard v. Quinn*, 593 F. Supp.

300 (D. Me. 1984) (April 1 petition deadline invalidated); *LaRouche v. Burgio*,

594 F. Supp. 614 (D.N.J. 1984) (establishing deadline 40 days prior to primary

election unconstitutional as applied to Presidential candidates); *see also*, *LaRouche*

*v. Monson*, 599 F. Supp. 621, 627-28 (D. Utah 1984) (state conceded April 15

petition deadline was unconstitutional as applied to Presidential candidates and

accepted petitions until September 12).

  None of the traditional asserted state interests can serve to justify Utah's

new January 8, 2024 deadline for independent presidential candidates to file both

their validated petition signatures (a required validation process which, itself,

pushes the actual petition signature collection deadline back into mid-December

2023) and their Certificate of Nomination.  No one can seriously contend that a

deadline to collect petition signatures nearly 11 months before the general election

and for filing a candidate declaration 10 months prior to the general election by an

independent presidential candidate is required to advance any state interest, let

alone the required legitimate state interest.  *New Alliance Party*, 933 F.2d at 1576.

Any argument advanced that Utah voters need 10 to 11 months to educate themselves on an independent presidential candidate for the 2024 general election is flatly laughable and foreclosed by *Anderson*. Nor does Utah's January 8th deadline serve an interest in equal treatment. First, major party candidates for their primary election need only to file a Certificate of Nomination without the need to collect and validate petition signatures in advance of their filing – so there is simply no equality sought to be imposed under current Utah law. Further, as in *Anderson*, its application to independent candidates does not result in equal treatment. "[The recognized political] parties have until the second Tuesday in June to select their nominees; an independent's judgment must be based on a history that ends April." *Stoddard*, 593 F.Supp. at 306 (citing *Anderson*, 460 U.S. at 80-801). As applied to Utah, the presidential primary elections for the two-major political parties is March 5, 2024. Further,

> The "equal treatment" accorded by [New Jersey's] imposing of the same pre-filing deadline on primary and independent candidates is only superficial "equality." There are obvious administrative reasons for requiring primary candidates to file at that time that simply do not apply to independent candidates. They are therefore unequals in this respect, and equal treatment of unequals is not equality. Similarly, primary candidates derive a benefit from their organized party support that offsets the burden imposed by the filing deadline in a way not shared by the independent candidate. Here again, the two types of candidacies are unequal in a way which makes imposition upon them of equal burdens no equality of treatment.

*Cromer*, 917 F.2d at 824-25 (citing *Anderson*, 460 U.S. at 799-801).  Although

administrative reasons – such as the necessity to verify signatures and construct,

proof, print/distribute/program primary ballots and/or machines – certainly justify

an early 2024 deadline for primary candidate to announce their intentions, no such

similar justification exists for the independent candidate deadline on the same date.

The general election ballots are not printed until well after the major party

conventions in July and August.  And in *Monson*, Utah conceded that it could

accept independent petitions until mid-September before the general election.

*Monson*, 599 F.Supp at 627-28.  Accordingly, Utah cannot now make any good-

faith argument to this Court that it needs independent presidential candidates to file

any documents until September, 2024.  As Utah must assert "a substantial interest

to be achieved by restrictions on…speech" and directly advance that substantial

interest, Utah cannot survive any merits test when they conceded in *Monson* that

Utah could accept independent presidential petition in September in

acknowledging that the then April 15th deadline was unconstitutional under

*Anderson*.  *See e.g., Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447

U.S. 557, 564 (1980).

  In light of these authorities and Utah's prior admissions to this Court, there

can be no doubt that Plaintiff RFK has much more than a reasonable likelihood of

success on the merits.

### 2.  **Plaintiff RFK Will Suffer Irreparable Harm**.

After concluding that Plaintiff RFK has a likelihood of success on the merits of their First and Fourteenth Amendment claim, Plaintiff RFK is "entitled to a presumption of irreparable injury."  The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  Further, in this action, in the absence of expedited preliminary injunctive relief, Plaintiff RFK will be required to immediately have to pay for the transportation and the effort to collect signatures by out-of-state professional petition circulators costing several thousand dollars at approximately $7 to $10 per raw signature – as Plaintiff RFK will be forced to attempt to comply with the unconstitutional deadline in order to secure ballot access in Utah, because at this early stage, volunteers are not sufficient in number and not skilled enough to collect the 1,500 to 1,600 signatures in December weather necessary to secure the required 1,000 valid petition signatures – all of which cannot later be recovered against Defendants in this lawsuit.  Accordingly, in the absence of the requested expedited preliminary injunctive relief, Plaintiff RFK will unquestionably suffer irreparable constitutional and monetary damages. Accordingly, Plaintiff RFK satisfies the second prong of the test to receive expedited preliminary injunctive relief.

### 3.  **Defendants Will Suffer No Injury By the Requested Injunctions**.

17

As no legitimate state interest is advanced by the January 8, 2024 filing deadline imposed, the requested injunctive relief will pose no injury to Defendants. Again, Defendants already acknowledged in *Monson* that it voluntarily accepted independent presidential petitions as late as mid-September as being filed within a reasonable time. Certainly, Plaintiff's request that this Court set the deadline for independent presidential candidates to file their validated signatures and Certificate of Nomination no later than Thursday, August 1, 2024 – a deadline consistent with many other state-imposed deadlines on independent presidential candidates for the 2024 general election, will cause no injury to Defendants. Accordingly, Plaintiff RFK clearly satisfies the third prong of the test for the grant of expedited preliminary injunctive relief.

### 4. <u>Requested Temporary and Preliminary Injunctive Relief is in the Public Interest</u>.

Under the final prong of the test for expedited preliminary injunctive relief, Plaintiff RFK must show that issuing the requested injunctive relief is in the public interest. Vindicating First Amendment freedoms is clearly in the public interest. *See*, *Utah Licensed Bev.*, 256 F.3d at 1076 ("Because we have held that Utah's challenged statutes also unconstitutionally limit free speech, we conclude that enjoining their enforcement is an appropriate remedy not adverse to the public interest.") *Elam Const., Inc. v. Regional Transp. Dist.*, 129 F.3d 1343, 1347 (10th Cir. 1997) ("The public interest also favors plaintiffs' assertion of their First

Amendment rights.")  *See also*, *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958); *Westberry v. Sanders*, 376 U.S. 1, 17 (1964) ("No right is more precious in a free country than that of having a voice in the election of those who make the laws under which….we live.  Other rights, even the most basic, are illusory if the right to vote is undermined.")  Accordingly, the requested expedited preliminary injunctive relief is in the public interest and therefore, Plaintiff RFK satisfies all four prongs and is entitled to the requested preliminary injunctive relief.

IV.   **<u>Conclusion</u>**

For all the foregoing reasons, Plaintiff RFK's pending motion for an expedited preliminary injunction should be granted, enjoining Defendants from enforcing the January 8, 2024, deadline for independent candidates to file validated nomination petition signatures and the Certificate of Nomination.  This Court should also preliminarily issue an Order setting the new deadline to August 1, 2024.

Respectfully submitted,

Dated: December 1, 2023                    **__/s/ Joel Ban_____**
Joel Ban, Esq.
*Local Counsel for Plaintiffs*
Ban Law Office P.C.
50 West Broadway #305
Salt Lake City, UT 84101
Phone (801) 532-2447
Fax (860) 770-6223

19

joel@banlawoffice.com

____/s/ Paul A. Rossi____

Paul A. Rossi. Esq.
*National Counsel for Plaintiffs*
*Pro Hac Vice* Admission Pending
IMPG Advocates
316 Hill Street
Suite 1020
Mountville, PA  17554
(717) 961-8978
Paul-Rossi@comcast.net