JASON N. DUPREE (17509)
SCOTT D. CHENEY (6198)
Assistant Utah Attorneys General
OFFICE OF THE UTAH ATTORNEY GENERAL
160 East 300 South, Fifth Floor
P.O. Box 140874
Salt Lake City, Utah 84114-0874
Telephone: (801) 366-0100
judpree@agutah.gov
scheney@agutah.gov

*Counsel for Defendants*

IN THE UNITED STATE DISTRICT COURT FOR THE DISTRICT OF UTAH

SOUTHERN REGION OF THE CENTRAL DIVISION

| | |
|---|---|
| STEVE MAXFIELD; ROBERT F. KENNEDY JR.; LIBERTY INITIATIVE FUND; TRENTON DONN POOL; and, ACCELETAVE 2020, LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>DEIDRE HENDERSON, in her official capacity as Lieutenant Governor of the State of Utah; and, RYAN COWLEY, in his official capacity as the Director of Elections of the State of Utah,<br><br>*Defendants*. | **DEFENDANTS' PARTIAL MOTION TO DISMISS**<br><br>Case No. 4:23-cv-00112-RJS<br><br>Honorable Judge Nuffer |

Defendants Deidre Henderson, in her official capacity as the Lieutenant Governor of the State of Utah, and Ryan Cowley, in his official capacity as the Director of Elections of the State of Utah (collectively, "Defendants") submit this Motion to Dismiss Counts IV and V of the Complaint pursuant to Rule 12(b)(6).

## RELIEF SOUGHT AND GROUNDS FOR MOTION

The people of Utah have the power to enact laws by initiative and remove laws by referendum. That authority is subject to reasonable statutory regulations of the election process. Just as the Legislature must comply with restrictions on its lawmaking powers, so too must the people comply with appropriate regulation of the initiative process.

Plaintiffs challenge two such appropriate regulations. In Count V, Plaintiffs challenge the requirement that paid signature gatherers must wear a badge that discloses that they are paid. And in Count IV, Plaintiffs challenge Utah's pay-per-signature compensation restriction for paid signature gatherers. These claims fail to state a plausible claim for relief and should be dismissed.

First, Plaintiffs allege in Count V that Utah's requirement that paid circulators wear a badge disclosing their paid status is unconstitutional. Plaintiffs are incorrect. This disclosure requirement is not a severe burden on Plaintiffs because it does not bar anyone from circulating a petition, does not reveal personal identity nor compromise anonymity, and the law does not severely restrict a circulator's ability to gather signatures. Furthermore, this disclosure requirement is justified by the State's important interest in providing the electorate information and fostering an informed electorate. This claim thus fails.

Second, Utah's pay-per-signature compensation restriction is constitutional. This statute prohibits signature-gathering companies, like Plaintiff Accelevate, from compensating signature

1

gatherers based on the number of signatures collected when paying individuals who circulate statewide initiative or referendum petitions.  This law advances the State's interest in protecting the integrity of the initiative process through the prevention of forgeries and reducing fraud in the signature collecting process.  The Second, Eighth, and Ninth circuits have upheld such laws.  Accordingly, Claim IV fails to sufficiently allege a plausible claim for relief and should be dismissed.

## FACTUAL BACKGROUND

Plaintiff Liberty Initiative Fund ("LIF") is an organization that has not yet, but plans to circulate an initiative petition in 2025.[1]  That prospective petition will seek to place an initiative on the 2026 general election ballot to place term limits on Utah state legislators.[2]  Plaintiff Steve Maxfield intends to support that planned initiative campaign.[3]

Plaintiff Trenton Pool is an experienced professional petition circulator.[4]  Pool has circulated petitions in several states, including states that ban compensation on a per-signature basis, such as Oregon, New York, and Montana.  Courts have upheld those states' per-signature compensation ban.[5]  And in those states, Pool "successfully circulated" petitions.[6]  Even when paid based on the time spent collecting signatures, Pool "has proven the ability to collect large numbers of valid signatures in short periods of time for his clients."[7]  This is because Pool, like

---

[1] Compl. ¶¶ 2, 8.
[2] *Id.*
[3] *Id.* ¶ 7.
[4] *Id.* ¶ 9.
[5] *See Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006) (upholding Oregon's pay-per-signature restriction); *Pers. v. New York State Bd of Elections*, 467 F.3d 141, 143 (2d Cir. 2006) (upholding New York's pay-per-signature restriction); *Pierce v. Jacobsen*, 44 F.4th 853, 857 (9th Cir. 2022) (upholding Montana's pay-per-signature restriction).
[6] Compl. ¶ 9.
[7] *Id.*

other "professional petition circulators," work hard when paid by the hour since they "rely on their good reputation to secure their next contract to circulate ballot access and initiative and referendum petition in Utah and other states."[8]

Pool is the president of Plaintiff Accelevate 2020, LLC.[9] Plaintiff Accelevate is a professional petition circulating firm that contracts with professional petition circulators to collect signatures on petitions for candidates, initiatives, and referendums.[10] Plaintiffs Pool and Accelevate intend to assist with the planned initiative petition to limit the number of terms members of the Utah Legislature may serve.[11]

The Complaint was filed by Plaintiffs Robert F. Kennedy, Jr. ("RFK"), Maxfield, LIF, Pool, and Accelevate. There appears to be no nexus between Plaintiff RFK's single claim and the remaining claims brought by the other Plaintiffs.

RFK is an independent candidate for President of the United States. In Count I of the Complaint, RFK challenged Utah's requirement that independent candidates for President must collect and verify 1,000 petition signatures by January 8, 2024. On January 9, 2024, Plaintiff RFK filed a Motion to Withdraw the motion for preliminary injunction.[12] In that Motion, Plaintiffs asserted RFK collected over 1,000 valid signatures which is sufficient to secure ballot access for the 2024 general election ballot, and that RFK filed a Declaration of Candidacy on January 3, 2024. Plaintiffs conceded that, as to RFK's claim, "there is currently no remedy required from this court for the 2024 election cycle."

---

[8] Compl. ¶ 36.
[9] *Id.* ¶ 10.
[10] *Id.*
[11] *Id.* ¶ 28.
[12] ECF No. 27.

Subject to this Motion are Counts IV and V of the Complaint.[13] In Count V, Plaintiffs Maxfield, LIF, Pool, and Accelevate challenge the requirement under Utah Code § 20A-7-104(4) that "paid initiative and/or referendum petition circulators wear a badge identifying and announcing their status as paid petition circulators."[14]

In Count IV, Plaintiffs Maxfield, LIF, Pool, and Accelevate challenge the ban on a per-signature compensation under Utah Code § 20A-7-104(1)-(3). The Complaint concedes that the State has an "interest in the prevention of petition fraud" as it pertains to "the manner of compensation" for circulators.[15]

## LEGAL STANDARD

Defendants bring their Motion pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. This Court recently explained the legal standard applicable to evaluating a Rule 12(b)(6) motion in *Garfield Cnty. v. Biden*, No. 4:22-CV-00059-DN-PK, 2023 WL 5180375, at *5 (D. Utah Aug. 11, 2023). As stated by this Court:

> To withstand a motion to dismiss, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. Dismissal is appropriate under Rule 12(b)(6) when the complaint, standing alone, is legally insufficient to state a claim on which relief may be granted. Each cause of action must be supported by enough sufficient, well-pleaded facts to be plausible on its face. In reviewing a complaint on a Rule 12(b)(6) motion to dismiss, factual allegations are accepted as true and reasonable inferences are drawn in a light most favorable to the plaintiff. However, assertions devoid of factual allegations that are nothing more than conclusory, and formulaic recitation of the law are disregarded.

*Id.* (citations and quotation marks omitted).

---

[13] In Counts II and III, Plaintiffs challenge the ban on out-of-state petition circulators. Defendants do not move to dismiss those claims in this Motion.
[14] Compl. ¶ 67.
[15] *Id.* ¶ 41.

# ARGUMENT

A.    <u>Because there is no federal right to sponsor a ballot initiative, states retain considerable discretion to set conditions for sponsoring initiatives</u>

Before addressing Plaintiffs' two claims, it's important to properly frame the interaction of federal constitutional rights with state-created rights to sponsor direct democracy measures. The right to sponsor an initiative in Utah is not protected by the federal Constitution. *See Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002) ("[N]othing in the language of the Constitution commands direct democracy[.]"). Direct democracy measures, such as initiative, referendum, and recall, are state-created rights and *not* "objectively, deeply rooted in this Nation's history and tradition . . . and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [they] were sacrificed." *Petrella v. Brownback*, 787 F.3d 1242, 1261 (10th Cir. 2015). Direct democracy is "not the system emplaced by the United States Constitution." *Count My Vote, Inc. v. Cox*, 2019 UT 60, ¶ 75, 452 P.3d 1109, 1124.

To be certain, if a state chooses to provide for direct democracy measures, it cannot implement statutory regulations of those measures that violate the federal Constitution. For example, if a state were to pass a law limiting the right of initiative to white people, the law would violate the Equal Protection Clause. Nevertheless, the Supreme Court has repeatedly affirmed that states have considerable leeway to implement neutral, non-discriminatory measures to regulate their initiative and referenda processes.

Recognizing the broad discretion states retain in this arena, the Supreme Court recently granted an emergency stay of a district court order that ordered Idaho to change its initiative procedures. *Little v. Reclaim Idaho*, 140 S. Ct. 2616 (2020). In explaining the decision, Chief Justice Roberts wrote that "States retain 'considerable leeway to protect the integrity and reliability of the initiative process.'" *Id.* (C.J. Robert, concurring) (quoting *Buckley v. American*

*Constitutional Law Foundation, Inc.*, 525 U.S. 182, 191 (1999)).  He continued, "This is not a case about the right to vote, but about how items are placed on the ballot in the first place. Nothing in the Constitution requires Idaho or any other State to provide for ballot initiatives." *Id.* at 2617.  He concluded, "Even assuming that the state laws at issue implicate the First Amendment, such reasonable, nondiscretionary restrictions are almost certainly justified by the important regulatory interests."  *Id.*

> Elsewhere, Justice Sotomayor has written:
>
> In assessing the countervailing interests at stake in this case, we must be mindful of the character of initiatives and referenda. These mechanisms of direct democracy are not compelled by the Federal Constitution. . . . States enjoy considerable leeway to . . . specify the requirements for obtaining ballot access . . . . It is by no means necessary for a State to prove that . . . reasonable, nondiscriminatory restrictions are narrowly tailored to its interests.

*John Doe No. 1 v. Reed*, 561 U.S. 186, 212-13 (2010) (J. Sotomayor, concurring) (internal quotations and citations omitted).

This proper framing of the issues presented to the Court informs the standard of review the Court should apply to assess each of Plaintiffs' claims.  Those standards are discussed herein in conjunction with the claims.  The starting point for the Court's analysis, though, is that states have considerable leeway to regulate their own direct democracy measures.

B.    <u>The paid status badge disclosure requirement does not violate the First Amendment</u>

In Count V of the Complaint, Plaintiffs challenge the requirement that paid initiative and referendum circulators must wear a badge, while gathering signatures, that states, "Paid Signature Gatherer."  Plaintiffs claim that the paid status badge disclosure requirement violates the First Amendment in two ways.  First, Plaintiffs allege that this requirement "imposes forced

6

speech on paid petition circulators in violation" of their First Amendment rights.[16] Plaintiffs also allege that this requirement subjects "paid circulators to an elevated threat that their identity will be discovered during the circulation of initiative and/or referendum petitions subjecting them to negative action by opponents of their proposed initiative and/or referendum."[17] Neither of the arguments have merit.

States must regulate their elections, including referenda and initiative campaigns, to ensure they are conducted in a fair and orderly fashion. *See, e.g., Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997); *see also Burdick v. Takushi*, 504 U.S. 428, 433 (1992). To require every campaign regulation be narrowly tailored to serve a compelling interest "would tie the hands of States seeking to assure that elections are operated equitably and efficiently." *Burdick,* 504 U.S. at 433.

Consequently, the Supreme Court has developed a framework for assessing the constitutionality of state election laws. When a state's rule imposes *severe* burdens on speech or association, it must be narrowly tailored to serve a compelling interest. However, lesser burdens trigger a less exacting review, and a state's important regulatory interests are typically enough to justify reasonable restrictions. *Id.* at 434. *See also Anderson v. Celebrezze*, 460 U.S. 780, 788-90 (1983); *Buckley*, 525 U.S. at 206-207 (J. Thomas, concurring). This has come to be known as the *Anderson-Burdick* balancing test. *See Fish v. Schwab*, 957 F.3d 1105, 1121 (10th Cir. 2020).

   1.   <u>The paid status disclosure requirement is not a severe burden</u>

The first question for the Court, then, is whether the paid status disclosure requirement imposes a severe or lesser burden on Plaintiffs' free speech rights. It is a lesser burden. The paid

---

[16] Compl. ¶ 51.
[17] Compl. ¶ 52.

7

status disclosure requirement does not bar anyone from circulating a petition. The requirement does not reveal personal identity nor compromise anonymity. And the law does not severely restrict a circulator's ability to gather signatures.

For this reason, courts addressing a paid status disclosure requirement, like the one at issue in this case, have found such requirement to be a lesser burden. In *Citizens in Charge v. Gale*, the district court addressed a Nebraska law that required disclosure of paid status. 810 F. Supp. 2d 916 (D. Neb. 2011). Under that law, if a petition is circulated by a paid circulator, each sheet of a petition must state, in large red font, that the "petition is circulated by a paid circulator." *Id.* at 922.

The district court found that "the disclosure statement does not impose a severe burden on plaintiffs' and intervenors' First Amendment rights." *Id.* First, the court found that there was no evidence that the disclosure requirement impaired the plaintiffs' or intervenors' "ability to obtain signatures." *Id.* at 928. In fact, the evidence showed just the opposite. The record evidence showed that the law had been in place for fifteen years. During that time, the vast majority of petition drives that used paid petition circulators were successful in placing issues, candidates, or parties on the ballot. And all six petitions from the intervening Libertarian Party were successful. Second, the court found that the disclosure statement was not a pejorative label nor compelled speech, but just a regulation designed to inform petition signers that the person gathering signatures is paid for such signatures. *Id.*

The Supreme Court of Michigan came to the same conclusion in *League of Women Voters of Michigan v. Sec'y of State*, 975 N.W.2d 840 (Mich. 2022). The Michigan legislature amended its law in 2018 to change the required form of petitions to include checkboxes "to clearly indicate whether the circulator of the petition is a paid signature gatherer or a volunteer signature

gatherer." *Id.* at 847. The plaintiffs argued that the checkbox requirement would discourage participation in the petition-circulation process and would discourage signing by triggering hostility to a paid circulator. *Id.* at 861.

First, the Michigan court found the checkbox requirement completely different from personal name identification. In *Buckley*, the Colorado law required petition circulators to wear a badge disclosing their name.[18] 525 U.S. at 186. The Supreme Court there found that this requirement forced circulators to reveal their identities at the same time they deliver their political message may expose circulators to "heat of the moment" harassment. *Id.* at 199.

But under the Michigan law, the circulators were not required to disclose their names or personal identities. The Supreme Court of Michigan found a disclosure of paid status much different from a name disclosure requirement. Because the circulators were not being forced to reveal their identity, the court found that the circulators were "not subject to the same sort of personalized heat-of-the-moment harassment." 975 N.W.2d at 861. Furthermore, there was no evidence that the paid status disclosure "would hinder petition-gathering companies from recruiting and retaining paid circulators." *Id.*

The court next addressed the plaintiffs' argument that the paid disclosure requirement "will discourage signing by triggering hostility to paid circulators." *Id.* But the court noted that a circulator's paid status might "provide an incentive for others to sign a petition to help someone who is just 'doing their job.'" *Id.* The court thus assumed that the paid status disclosure requirement only imposed a minimal burden.

---

[18] In *Buckley*, because the identification requirement alone rendered the statute unconstitutional, the Tenth Circuit and Supreme Court expressed no opinion on the constitutionality of the additional requirement that the badge disclose whether a circulator was paid or a volunteer.

9

Here too, the requirement in Utah that paid circulators wear a badge disclosing their paid status is not a severe burden. The Supreme Court has said that disclosure requirements do not impose a ceiling on speech, and do not prevent anyone from speaking. *Citizens United v. Fed. Election Comm'n,* 558 U.S. 310, 366 (2010). Plaintiffs do not allege that this paid status disclosure will impair Plaintiffs' ability to gather signatures. Nor will the paid status disclosure threaten Plaintiffs' anonymity while signature gathering. The law does not require circulators to disclose their name. The disclosure requirement is merely designed to inform petition signers that the person gathering signatures is paid for such signatures. And not every ballot initiative regulation "establish[es] a compelled speech claim." *Semple v. Griswold*, 934 F.3d 1134, 1143 (10th Cir. 2019). The paid status disclosure requirement is therefore a minimal burden on Plaintiffs' rights.

2. <u>The disclosure requirement is justified by the State's important interests</u>

Because it is a minimal burden, the State's important regulatory interest in providing the electorate with pertinent information justifies the disclosure requirement. States have an important interest in providing the electorate information and fostering an informed electorate. *See Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 228 (1989) ("Certainly the State has a legitimate interest in fostering an informed electorate."). The United States Supreme Court has repeatedly held that increasing the information available to the voters is a legitimate state interest. *See, e.g., Anderson*, 460 U.S. at 796 ("There can be no question about the legitimacy of the State's interest in fostering informed and educated expressions of the popular will in a general election.").

As it pertains to disclosure requirements specifically, disclosure requirements provide "the electorate with information about . . . election-related spending" and "help citizens make

10

informed choices in the political marketplace." *Citizens United*, 558 U.S. at 367. This interest justifies Utah's paid status disclosure requirement for paid circulators.

In *League of Women Voters of Michigan*, the Supreme Court of Michigan explained how a paid disclosure requirement provides "valuable information" to the electors:

> It is no secret that financial incentives can alter individuals' priorities—it may well be that electors see a volunteer as more committed to the cause they are circulating petitions for, and thus more worthy of their support. On the other hand, an elector could view a paid circulator as evidence that the petition drive is well-funded, more likely to succeed, and therefore more worthy of support. Either way, the result is *more* relevant information for the electorate.

975 N.W.2d at 861.

The Court should therefore uphold the paid disclosure requirement because the "requirement is so minimal that a governmental interest in increasing information for voters justifies the requirement." *Id.* at 862.

The district court also upheld Nebraska's paid disclosure requirement in *Citizens in Charge*. There, the district court found "that the disclosure statement is a reasonable and a nondiscriminatory regulation designed to inform petition signers that the person gathering the petition signatures might be paid for such signatures." 810 F. Supp. 2d at 928. The court concluded that "this language is intended merely to inform the electorate of the paid or volunteer status," and such "information is justified based on a governmental interest in providing the electorate with information." *Id.* (cleaned up).

Here too, Utah's disclosure requirement of paid status for paid signature gatherers is a reasonable regulation that informs the electorate that the person gathering the petition signatures is paid for such signatures. This requirement is justified by the State's interest in providing the electorate with information. The requirement therefore does not violate Plaintiffs' rights, and this claim should be dismissed.

11

    C.    <u>The pay-per-signature restriction is constitutional</u>

In Count IV, Plaintiffs challenge the prohibition on per-signature compensation for paid circulators. Utah Code § 20A-7-104(1) states that for an initiative or referendum petition, a "person may not pay a person to gather signatures . . . based on a rate per signature" or "on a rate per verified signature." Plaintiffs allege that this statute is unconstitutional because the majority of "the best" professional petition circulators refuse to work on any petition drive where compensation is based on any factor other than the number of non-fraudulent signatures collected. Plaintiffs further allege that professional petition circulators "intentionally do not work as hard when their compensation is based on the number of hours worked than when their compensation is based on the number of non-fraudulent signatures collected."

This claim fails. The compensation requirement does not restrict anyone from circulating a petition. Nor does the compensation requirement restrict any speech. For those reasons, multiple circuit courts of appeals have upheld laws prohibiting per-signature compensation.

    1.    <u>The pay-per-signature restriction is not a severe burden</u>

Plaintiffs fail to sufficiently allege that the compensation requirement severely burdens Plaintiffs' First Amendment rights. First, the law only regulates payment methodology. The law does not prohibit any speech, nor does the law regulate any message the circulators communicate to voters during signature gathering. The compensation requirement does not directly regulate who can circulate a petition. The prohibition on per-signature payment does not silence a single voice. Nor does the law prevent a group from using money to amplify its message.

The compensation requirement affects merely the business arrangement between a petition circulator and a vendor. Plaintiffs can still use both volunteers and paid circulators, and can still use their money to amplify their message. The law regulates only the method of

payment, not the communicative aspect of signature-gathering. Therefore, the compensation requirement does not directly regulate speech.

Second, Plaintiffs' allegations show that any incidental burden on Plaintiffs' rights is minimal. Plaintiffs claim that some circulators refuse to work under a per-time compensation basis. The Tenth Circuit recognizes the difference between "a statute regulating how a speaker may speak" and a statute with a "completely incidental impact" on speech, which does not implicate the First Amendment. *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1100 (10th Cir. 2006) (quoting *See Riley v. Nat'l Fed'n of the Blind of N.C., Inc.,* 487 U.S. 781 (1988)). At most, Plaintiffs allege that the compensation has a "completely incidental impact" on speech, as the law certainly does not regulate how a speaker may speak. But such allegations do not rise to a level of constitutional concern.

While Plaintiffs allege that some circulators elect to not work under a time compensation basis, that is those circulators' choice, not a legal restriction. Consequently, the law does not violate Plaintiffs' First Amendment rights. Plaintiffs concede that some professional circulators will work under a time compensation basis. Furthermore, Plaintiff Pool worked in states like Oregon and New York, where state laws prohibit per-signature compensation. Plaintiff Pool "successfully" circulated petitions in those states. Accordingly, because the law regulates only a business relationship and not speech, the compensation requirement is not a severe burden on Plaintiffs' rights.

Multiple circuit courts have come to that conclusion. In *Pierce v. Jacobsen*, 44 F.4th 853, 857 (9th Cir. 2022), the plaintiffs challenged Montana's law that bars paying signature gatherers based upon the number of signatures obtained. The district court held that the pay-per-signature restriction does not impose a severe burden on First Amendment rights and that the state

13

established that an important regulatory interest is furthered by this restriction. *Id.* The Ninth Circuit affirmed these holdings.

The plaintiffs argued that the pay-per-signature restriction imposed a severe burden on speech. *Id.* at 864. Specifically, the plaintiffs contended that the restriction reduces the pool of available circulators and makes signature gathering more expensive. The Ninth Circuit found that the plaintiffs did not show that the pay-per-signature restriction imposes a severe burden on speech. The court found that the pay-per-signature restriction "does not categorically limit the pool of circulators. Instead, if some signature gatherers will only work on a per-signature basis, that is their choice." *Id.*

The Court of Appeals further noted that the pay-per-signature restriction "is not a complete prohibition on any form of payment." *Id.* at 865. The petition proponents "can pay based upon time." Moreover, the proponents "also can use compensation and employment schemes," such as "terminating unproductive circulators." *Id.* The plaintiffs could not explain "why their concerns about managing circulator performance would not be resolved by adopting one of these other available methods." *Id.* The Ninth Circuit therefore found that the pay-per-signature restriction was not a severe burden.

Similarly, in *Initiative & Referendum Inst. v. Jaeger*, 241 F.3d 614 (8th Cir. 2001), the Eighth Circuit upheld North Dakota's statute which prohibited payment to petition circulators on a basis related to the number of signatures obtained. The Court of Appeals found that the plaintiffs failed to show a severe burden on the rights because the statute "only regulates the way in which circulators may be paid" and "does not involve the complete prohibition of payment." *Id.* at 617. *See also Pers. v. New York State Bd of Elections*, 467 F.3d 141, 143 (2d Cir. 2006) ("We join the Eighth and Ninth Circuits in holding that a state law prohibiting the payment of

14

electoral petition signature gatherers on a per-signature basis does not per se violate the First or Fourteenth Amendments.").

Accordingly, Utah's pay-per-signature restriction is not a severe burden on Plaintiffs. The restriction is not a complete ban on any form of payment. The restriction does not directly regulate who can circulate a petition. While Plaintiffs allege that circulators paid by the hour do not work as effectively, nothing in the law prohibits Plaintiffs from terminating unproductive circulators. And Plaintiffs are free to pay a higher hourly rate based on experience to someone like Pool, who has a proven track record of success with multiple petitions, compared to someone who has only circulated once before. The pay-per-signature restriction is therefore not a severe burden.

2. <u>The pay-per-signature restriction is justified by the State's interest in fraud prevention</u>

As the pay-per-signature restriction is not a severe burden, the law is constitutional because it is justified by the State's important interest in preventing fraud. States have a vital interest in protecting their electoral processes, including the process by which an initiative gets onto the ballot. States may protect their electoral systems and respond to petition fraud. "As a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Burdick,* 504 U.S. at 433 (citing *Storer v. Brown,* 415 U.S. 724, 730 (1974)).

The State has important interests in preventing fraud and the appearance of fraud in the electoral process. "Preserving the integrity of the electoral process, preventing corruption, and '[sustaining] the active, alert responsibility of the individual citizen in a democracy for the wise conduct of government' are interests of the highest importance." *First National Bank of Boston v. Bellotti,* 435 U.S. 765, 788-89 (1978) (citations omitted). The Supreme Court has recognized

15

that the States' interests include "protecting the integrity, fairness, and efficiency of their ballots and election processes." *Timmons*, 520 U.S. at 364.

Here, Utah's law is amply supported by the justification that paying circulators by the number of signatures is an incentive to commit two types of fraud: 1) submitting false signatures; and 2) misrepresenting the contents of a petition to induce citizens to sign. The compensation requirement combats fraud and the appearance of fraud by removing a direct incentive to unlawfully pad the number of signatures obtained. If the Court were to strike down this statute, a statute which strives to prevent fraud before it occurs, the Court would limit Utah to after-the-fact attempts to find, locate, and prosecute those who forge signatures or lie to obtain them.

Rather than rely solely on the ability to discover and successfully prosecute those who violate Utah's laws prohibiting election fraud, the State seeks to eliminate the motivation to commit fraud before it occurs. Utah's law is a reasonable regulation to combat fraud that does not significantly burden Plaintiffs or similar groups, as Plaintiffs remains able to communicate with voters and qualify issues for the ballot. Thus, Utah seeks to regulate not speech, but a specific problematic business practice.

Courts agree. In *Pierce*, the Ninth Circuit held that Montana's pay-per-signature restriction "furthers an important state interest in preventing fraud." 44 F.4th at 866. The Ninth Circuit began with noting that the law targets "fraud connected with gatherers paid on a per-signature model." *Id.* at 866. This is because "per-signature payment arrangements encourage . . . fraud." *Id.* The pay-per-signature restriction therefore "rationally reduces the incentive to forge signatures and commit fraud." *Id.*

The plaintiffs proposed other methods they asserted would also reduce fraud. The Court of Appeals flatly rejected this argument. "Once a non-discriminatory restriction is determined to

16

impose a lesser burden," the court does not "determine whether the state's chosen method for prevention of fraud is the best imaginable." *Id.* (citation omitted).  Rather, the court's inquiry is "limited to examining whether the restriction is reasonably related to the important regulatory interest." *Id.* (cleaned up).  The Ninth Circuit held that "the pay-per-signature restriction meets this test." *Id.*

This Court should also uphold Utah's pay-per-signature restriction.  The statute targets fraud and reduces the incentive to submit false signatures.  The State's interest in preventing and reducing fraud justifies the pay-per-signature restriction.  Plaintiffs' claim hinges on the assertion that a pay-per-signature compensation is the more "effective" payment model.  But the "argument that per-signature payment is, from a business perspective, the best incentive to campaign workers is insufficient to show" that the statute "imposes an unconstitutional burden on the exercise of [Plaintiffs'] rights when balanced against the state's interest in preventing fraud in the gathering of signatures." *Person*, 467 F.3d at 143 (upholding New York's pay-per-signature ban).  *See also Jaeger*, 241 F.3d at 618 (state's interest regarding signature fraud justified the state's prohibition on commission payments).

Plaintiffs fail to plausibly allege a violation of their constitutional rights.  The Court should therefore dismiss this claim.

## CONCLUSION

For the reasons stated above, this Court should dismiss Counts IV and V of the Complaint, with prejudice.

DATED: February 5, 2024.

                                                  OFFICE OF THE UTAH ATTORNEY GENERAL

                                                  */s/ Jason N. Dupree*
                                                  JASON N. DUPREE
                                                  SCOTT CHENEY
                                                  Assistant Utah Attorneys General
                                                  *Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on **February 5, 2024,** the foregoing **DEFENDANTS' PARTIAL MOTION TO DISMISS** was filed using the court's electronic filing system. I further certify that a true and correct copy was served, via email, to the following:

**Joel Ban, Esq.**
Ban Law Office P.C.
joel@banlawoffice.com

Paul A. Rossi, Esq.
Paul-rossi@comcast.net

*Attorneys for Plaintiffs*

UTAH ATTORNEY GENERAL'S OFFICE

*/s/ Seth A. Huxford*
SETH A. HUXFORD
*Legal Secretary*