THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| STEVE MAXFIELD; ROBERT F. KENNEDY JR.; LIBERTY INITIATIVE FUND; TRENTON DONN POOL; and ACCELEVATE 2020, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>DEIDRE M. HENDERSON, in her official capacity as Lieutenant Governor of the State of Utah; and RYAN COWLEY, in his official capacity as the Director of Elections of the State of Utah,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS**<br><br>Case No. 4:23-cv-00112-DN-PK<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

Plaintiffs Steve Maxfield ("Maxfield"), Robert F. Kennedy Jr., Liberty Initiative Fund ("LIF"), Trenton Donn Pool ("Pool"), and Accelevate 2020, LLC ("Accelevate") assert five causes of action against Defendants Deidre M. Henderson and Ryan Cowley.[1] These causes of action concern Utah's citizen initiative regulations and nominating procedures for candidates to appear on Utah ballots. On September 25, 2026, three of the causes of action that related to Utah's nominating procedures and its previous prohibition on out-of-state petition circulators were dismissed without prejudice as moot.[2] The remaining two causes of action, Counts IV and V of Plaintiffs' Complaint, concern Utah's citizen initiative requirements that paid signature gatherers: (a) be paid based on an hourly rate rather than on the number of signatures that they

[1] Complaint, docket no. 2, filed December 4, 2023.

[2] Order Finding Moot [45] Defendants' Motion to Dismiss, docket no. 53, filed September 25, 2026.

collect; and (b) wear a badge displaying the words "Paid Signature Gatherer" when gathering signatures.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants filed a Partial Motion to Dismiss seeking dismissal of Counts IV and V for failure to state a claim on which relief can be granted.[3] Plaintiffs filed a Response in opposition to Defendants' Motion.[4] And Defendants filed a Reply.[5]

After consideration of the parties' arguments, and for the reasons stated below, the Defendants' Partial Motion to Dismiss is GRANTED. Count IV fails to state a claim for which relief may be granted because Plaintiffs' allegations do not implicate the First Amendment. Count V fails to state a claim for which relief may be granted because, under the *Anderson-Burdick* balancing test, the burden imposed by the badge requirement is justified by Utah's interest in informing the electorate when a message is being sponsored. Counts IV and V of Plaintiffs' Complaint are DISMISSED without prejudice.

**CONTENTS**

1 DISCUSSION .......... 2
1.1 Plaintiffs' allegations concerning the Compensation Ban do not implicate the First Amendment .......... 5
1.2 The burden imposed by the Paid Status Disclosure Requirement is justified by Utah's legitimate interest in informing the electorate when a message is being sponsored .......... 8
2 ORDER .......... 13

## 1 DISCUSSION

Defendants seek dismissal of Counts IV and V of Plaintiffs' Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants are entitled to dismissal under Rule

---

[3] Defendants' Partial Motion to Dismiss, docket no. 33, filed February 5, 2024.

[4] Plaintiffs' Memorandum of Law in Partial Opposition to Defendants' Motion to Dismiss, docket no. 38, filed March 14, 2024.

[5] Defendants' Reply in Support of Partial Motion to Dismiss, docket no. 39, filed March 28, 2024.

12(b)(6) when the complaint, standing alone, is legally insufficient to state a claim for which relief may be granted.[6] When considering a motion to dismiss for failure to state a claim, the thrust of all well-pleaded facts in the complaint is presumed, but conclusory allegations need not be considered.[7] A court is not bound to accept a complaint's legal conclusions and opinions, even if they are couched as facts.[8]

Plaintiffs Maxfield, LIF, Pool, and Accelevate are individuals and entities that intend to engage in initiative campaigns in Utah and face restrictions from Utah's initiative regulations.[9] Defendants are individuals charged with enforcing Utah's initiative regulations.[10] Counts IV and V of Plaintiffs' Complaint allege First and Fourteenth Amendment deficiencies in Utah's initiative regulations.

Plaintiffs allege that Utah's initiative regulations implicate the First and Fourteenth Amendments.[11] "[I]nitiatives are state-created rights and are therefore not guaranteed by the U.S. Constitution."[12] Utah's Constitution, however, grants its voters the right to initiate legislation "in the numbers, under the conditions, in the manner, and within the time provided by statute."[13] "Utah was the second state in the Union to extend the power to initiate legislation to citizens."[14]

---

[6] *See Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

[7] *See Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009).

[8] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995).

[9] Complaint ¶¶ 7–10.

[10] Complaint ¶¶ 11–12.

[11] Complaint ¶¶ 64–67.

[12] *Save Palisade Fruitlands v. Todd*, 279 F.3d 1204, 1211 (10th Cir. 2002).

[13] Utah Const. art. VI, § 1(2)(a)(i).

[14] *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1085 (10th Cir. 2006) (citing Thomas E. Cronin, *Direct Democracy: The Politics of Initiative, Referendum, and Recall* 51 (1989)).

The Circuits apply conflicting frameworks to such First Amendment challenges.[15] In the Tenth Circuit, not all initiative regulations implicate the First Amendment. "Although the First Amendment protects political speech incident to an initiative campaign, it does not protect the right to make law, by initiative or otherwise."[16] "[T]he right to free speech . . . is not implicated by the state's creation of an initiative procedure, but only by the state's attempts to regulate speech *associated with* an initiative procedure."[17] "The distinction is between laws that regulate or restrict the communicative conduct of persons advocating a position in a referendum, which warrant strict scrutiny, and laws that determine the process by which legislation is enacted, which do not."[18] This distinction is similar to the Utah Constitution's grant of the right of direct legislation, but subject to statutes that may impose numbers, conditions, modes, and times for doing so.

At issue here are the requirements of Utah Code §§ 20A-7-104(1)–(3).[19] In Count IV, Plaintiffs challenge Utah's requirements that "[a] person may not pay a person to gather signatures under this chapter unless the payment is based on an hourly rate" and that "[a] person may not accept payment made in violation of this section"[20] (the "Compensation Ban"). In Count V, Plaintiffs challenge Utah's requirement that:

> An individual who is paid to gather signatures for a petition . . . shall, while gathering signatures, wear a badge on the front of the individual's torso that complies with the following . . . (b) the information on the badge shall be in at

---

[15] *Little v. Reclaim Idaho*, 591 U.S. 1060, 1061 (2020) (C.J. Roberts, concurring in the grant of stay).

[16] *Walker*, 450 F.3d at 1099.

[17] *Id*.

[18] *Id*. at 1099–1100.

[19] Effective May 6, 2026, after the parties submitted their memoranda, Utah Code § 20A-7-104 was amended. This amendment does not materially affect the determination of Defendants' Partial Motion to Dismiss.

[20] Utah Code §§ 20A-7-104(1), (2).

> least 24-point type and include the following information: . . . the words "Paid Signature Gatherer" . . .[21]

(the "Paid Status Disclosure Requirement").

### 1.1 Plaintiffs' allegations concerning the Compensation Ban do not implicate the First Amendment

Plaintiffs allege the following facts concerning the Compensation Ban, which are taken as true for the purpose of evaluating Defendants' Partial Motion to Dismiss. It is less efficient to pay petition circulators per-hour than per-signature because petition circulators do not work as hard when they are paid per hour and are incentivized to drag out a petition drive.[22] Paying petition circulators per-hour severely restricts Plaintiffs' ability to raise funds and collect signatures for their initiative campaigns.[23] The state legislature intentionally imposed the Compensation Ban to make it more difficult for sponsors to secure ballot access.[24] The vast majority of professional petition circulators refuse to work unless they are paid per-signature.[25]

The thrust of Plaintiffs' allegations concern the effect that the Compensation Ban has on their ability to plan, fundraise for, and successfully orchestrate an initiative campaign. In other words, Plaintiffs allege that the Compensation Ban makes it more difficult for them to run a successful initiative campaign.

The Tenth Circuit's standard articulated in *Walker* and *Semple v. Griswold*[26] dictates that such allegations do not implicate the First Amendment. "[The Tenth Circuit] has previously addressed and rejected the proposition that the First Amendment is implicated by a state law that

---

[21] Utah Code § 20A-7-104(3).

[22] Complaint ¶¶ 8, 44–45.

[23] Complaint ¶¶ 8, 46–47.

[24] Complaint ¶ 48.

[25] Complaint ¶¶ 39–40.

[26] 934 F.3d 1134 (10th Cir. 2019).

makes it more difficult to pass a ballot initiative."[27] "[T]he difficulty of the [initiative] process alone is insufficient to implicate the First Amendment, as long as the communication of ideas associated with the circulation of petitions is not affected."[28] "The communication of the ideas and beliefs underlying a proposed initiative is not dependent on whether the initiative ultimately appears on the state-wide ballot."[29] "[T]here is a crucial difference between a law that has the 'inevitable effect' of reducing speech because it restricts or regulates speech, and a law that has the 'inevitable effect' of reducing speech because it makes particular speech less likely to succeed."[30] "The First Amendment ensures that all points of view may be heard; it does not ensure that all points of view are equally likely to prevail."[31]

Plaintiffs primarily rely on *Indep. Inst. v. Gessler*,[32] which is nonbinding precedent that did not apply the Tenth Circuit's framework. For that reason, *Gessler* is not persuasive. The Tenth Circuit did not have the chance to review *Gessler*. And the Tenth Circuit's decision in *Semple* subsequent to *Gessler* cautions against adopting an approach that "would embroil the federal courts in nearly every procedural hurdle imposed by state legislatures on the citizen initiative process."[33] Plaintiffs' position that the First Amendment is implicated by their difficulties with planning, fundraising, and successfully orchestrating an initiative campaign was rejected by *Walker* and *Semple*, and requires an approach that *Semple* cautions against.

---

[27] *Id.* at 1142 (citing *Walker*, 450 F.3d at 1099–1103).

[28] *Walker*, 450 F.3d at 1100 (quoting *Dobrovolny v. Moore*, 126 F.3d 1111, 1113 (8th Cir. 1997)).

[29] *Semple*, 934 F.3d at 1143.

[30] *Walker*, 450 F.3d at 1100.

[31] *Id.* at 1101.

[32] 936 F. Supp. 2d 1256 (D. Colo. 2013).

[33] *Semple*, 934 F.3d at 1143.

The Utah legislature's intent in passing the Compensation Ban does not change this analysis. *Semple* is instructive here as well. In *Semple*, the purpose of the regulation at issue "was to make it more difficult to amend Colorado's constitution using the initiative process."[34] Despite this purpose, *Semple* held that the regulation at issue did not implicate the First Amendment.[35]

Plaintiffs also allege that the vast majority of petition circulators refuse to work unless they are paid per-signature.[36] A petition circulator's self-imposed refusal to work based on a proscribed method of payment, however, does not transform a process regulation into an unconstitutional burden on speech.

The Supreme Court previously considered categorical restrictions on paid petition circulators in *Meyer v. Grant*[37] and *Buckley v. Am. Const. L. Found., Inc.*[38] In *Meyer*, the Supreme Court held that a Colorado law that prohibited all forms of payment to petition circulators violated the First Amendment.[39] In *Buckley*, the Supreme Court held that a Colorado law that required petition circulators to be registered voters violated the First Amendment.[40] The laws at issue in *Meyer* and *Buckley* "regulated the process of advocacy itself: the laws dictated *who* could speak (only volunteer circulators and registered voters) or *how* to go about speaking (with name badges and subsequent reports)."[41] The Compensation Ban does not. Following the

---

[34] *Id.* at 1137.

[35] *Id.* at 1142.

[36] Complaint ¶¶ 39–40.

[37] 486 U.S. 414 (1988).

[38] 525 U.S. 182 (1999).

[39] 486 U.S. at 428.

[40] 525 U.S. at 197.

[41] *Walker*, 450 F.3d at 1099.

consensus of the Second,[42] Eighth,[43] and Ninth[44] Circuits, pay-per-signature bans like the Compensation Ban are properly distinguished from the categorical restrictions in *Meyer* and *Buckley*.

The Compensation Ban does not prohibit anyone from serving as a petition circulator. In this way, the Compensation Ban differs from *Meyer*, where the pool of circulators was limited to volunteers, and *Buckley*, where the pool of circulators was limited to state residents registered to vote. And the Compensation Ban does not foreclose any channel of communication. It also does not dictate how any person must go about speaking. The Compensation Ban is properly viewed as an initiative regulation that determines the process by which legislation is enacted. Therefore, under the Tenth Circuit's framework, the Compensation Ban does not implicate the First Amendment. And Plaintiff's Count IV fails to state a claim on which relief may be granted.

### 1.2 The burden imposed by the Paid Status Disclosure Requirement is justified by Utah's legitimate interest in informing the electorate when a message is being sponsored

Plaintiffs allege in Count V that the Paid Status Disclosure Requirement violates their First and Fourteenth Amendment rights by requiring paid petition circulators to disclose their paid status when collecting signatures.[45] Unlike the Compensation Ban, the Paid Status Disclosure Requirement concerns petition circulators' communicative conduct when gathering signatures. Therefore, it does implicate the First Amendment. This, however, does not mean that Count V states a claim on which relief may be granted.

---

[42] *Person. v. New York State Bd of Elections*, 467 F.3d 141, 143 (2d Cir. 2006).

[43] *Initiative & Referendum Inst. v. Jaeger*, 241 F.3d 614, 618 (8th Cir. 2001).

[44] *Pierce v. Jacobsen*, 44 F.4th 853, 864 (9th Cir. 2022).

[45] Complaint ¶¶ 50–53, 66–67.

The parties disagree on what level of scrutiny should be applied in reviewing Plaintiffs' First Amendment challenge to the Paid Status Disclosure Requirement. Defendants argue that the Paid Status Disclosure Requirement is a content-neutral election law that should be analyzed under the *Anderson-Burdick* balancing test. Plaintiffs argue that the Paid Status Disclosure Requirement raises compelled-speech and content-based discrimination concerns that require more exacting scrutiny.

"To state a compelled-speech claim, a plaintiff must establish three elements: (1) speech; (2) to which the speaker objects; that is (3) compelled by some governmental action."[46] "[M]erely objecting to the fact that the government has required speech is not enough; instead, a party must allege some disagreement with the viewpoint conveyed by this speech."[47] The focus of compelled-speech analysis is whether the ideas expressed by the required action alter the speaker's own message.[48]

Under this framework, Plaintiffs have failed to allege facts sufficient to raise a compelled speech claim. The Paid Status Disclosure Requirement does not compel paid circulators to adhere to a particular viewpoint. It does not require paid circulators to express an idea that alters their message. And it does not prohibit Plaintiffs from conveying their message. Instead, it requires petition circulators to disclose their paid status when gathering signatures. At most, this disclosure has the effect of decreasing the likelihood that Plaintiffs' proposed initiative will appear on the state-wide ballot. Similar to the compelled speech claim rejected in *Semple*, this consequence "is not the type of state-mandated penalty necessary to establish a compelled speech claim because that consequence has only a minimal impact on Plaintiffs' First

---

[46] *Semple*, 934 F.3d at 1143.

[47] *Cressman v. Thompson*, 798 F.3d 938, 963 (10th Cir. 2015).

[48] *See id.* at 964.

Amendment rights."[49] Plaintiffs' allegations to the contrary[50] are not factual allegations, but rather incorrect legal conclusions.

Plaintiffs have also failed to allege facts sufficient to show that the Paid Status Disclosure Requirement is a content-based regulation. "A content-based regulation 'target[s] speech based on its communicative content,' restricting discussion of a subject matter or topic."[51] "The principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys."[52] "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others."[53] The Paid Status Disclosure Requirement does not restrict discussion of any subject matter or topic. Plaintiffs have not alleged that the Paid Status Disclosure Requirement was adopted because of a disagreement with a message that they convey. And any incidental effect that Paid Status Disclosure Requirement has on paid petition circulators as compared to volunteer petition circulators serves the legitimate purpose of informing the electorate when a message is being sponsored.

The Paid Status Disclosure Requirement is a content-neutral state election law. Content-neutral state election laws that implicate the First Amendment are reviewed under the *Anderson-Burdick* balancing test, which weighs:

> "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden

---

[49] *Semple*, 934 F.3d at 1143.

[50] Complaint ¶¶ 51, 67.

[51] *Vidal v. Elster*, 602 U.S. 286, 292–293 (2024) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)).

[52] *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

[53] *Id.*

> imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights."[54]

The rigorousness of this inquiry "depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights."[55]

Plaintiffs allege that the Paid Status Disclosure Requirement burdens their First Amendment rights by imposing forced speech on paid petition circulators and exposing paid petition circulators to an elevated threat that their identity will be discovered.[56] But Plaintiffs concede that the burden imposed by the Paid Status Disclosure Requirement is less than severe.[57]

In *Buckley*, the Supreme Court considered the burden imposed by a Colorado law that required petition circulators to wear identification badges. Such an identification badge requirement "forces circulators to reveal their identities at the same time they deliver their political message. . . ."[58] And it "compels personal name identification at the precise moment when the circulator's interest in anonymity is greatest."[59] By forcing petition circulators to reveal their identity, the requirement in *Buckley* exposed the circulator to a risk of "heat of the moment" harassment.[60] The Paid Status Disclosure Requirement, however, differs from the identification badge requirement in *Buckley* because it does not compel petition circulators to shed their anonymity. Instead, the Paid Status Disclosure Requirement imposes a lesser burden on Plaintiffs' First Amendment rights.

---

[54] *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).

[55] *Id*.

[56] Complaint ¶¶ 51–52.

[57] Plaintiffs' Memorandum of Law in Partial Opposition to Defendants' Motion to Dismiss, docket no. 38 at 13.

[58] *Buckley*, 525 U.S. at 198–199 (quoting *Am. Const. L. Found., Inc. v. Meyer*, 120 F.3d 1092, 1102 (10th Cir. 1997)).

[59] *Id.* at 200.

[60] *Id.* at 199.

Under the *Anderson-Burdick* balancing test, this burden is weighed against the State's justifications for imposing the burden. "[W]hen a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions."[61] "States allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process, as they have with respect to election processes generally."[62]

Voter education is an important regulatory interest. "There can be no question about the legitimacy of the State's interest in fostering informed and educated expressions of the popular will in a general election."[63] There are, however, limits to Utah's interest in voter education concerning an initiative campaign. *Buckley* contrasted disclosure requirements related to the payor as opposed to disclosure requirements related to the payee. "What is of interest is the payor, not the payee."[64] "To inform the public 'where [the] money comes from,' . . . the State legitimately requires sponsors of ballet initiatives to disclose who pays petition circulators, and how much."[65] The Paid Status Disclosure Requirement is justified by a similar interest. It educates voters when a payor is sponsoring an initiative campaign.

Under the *Anderson-Burdick* balancing test, Plaintiffs' allegations are insufficient to state a cause of action for a First Amendment violation. Plaintiffs concede that the burden imposed by the Paid Status Disclosure Requirement is less than severe. And Plaintiffs have failed to allege

---

[61] *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 788).

[62] *Buckley*, 525 U.S. at 191.

[63] *Anderson*, 460 U.S. at 796.

[64] *Buckley*, 525 U.S. at 203 (quoting *Am. Const. L. Found., Inc. v. Meyer*, 870 F. Supp. 995, 1003 (D. Colo. 1994)).

[65] *Id.* at 205 (quoting *Buckley v. Valeo*, 424 U.S. 1, 66 (1976)).

facts sufficient to show that the Paid Status Disclosure imposes the same risk of heat of the moment harassment as a name identification badge. The limited burden imposed by the Paid Status Disclosure Requirement is justified by Utah's important regulatory interest in educating its voters when a message is being sponsored. Therefore, Count V fails to state a claim on which relief can be granted.

## 2 ORDER

IT IS HEREBY ORDERED that Defendants' Partial Motion to Dismiss[66] is GRANTED. Counts IV and V of Plaintiffs' Complaint[67] are DISMISSED without prejudice.

The Clerk is directed to close the case.

Signed October 30, 2026.

BY THE COURT

David Nuffer
United States District Judge

---

[66] Docket no. 33, filed February 5, 2024.

[67] Complaint ¶¶ 64–67, docket no. 2, filed December 4, 2023.